THE STATE OF OHIO, APPELLEE, *v.* JELLS, APPELLANT.

[Cite as State *v.* Jells (1990), 53 Ohio St. 3d 22.]

(No. 89-1187—Submitted April 11, 1990—Decided August 8, 1990.)

24

*John T. Corrigan,* prosecuting attorney, and *Carmen M. Marino,* for appellee.

*Randall M. Dana,* public defender, *David C. Stebbins* and *Joann Bour-Stokes,* for appellant.

HOLMES, J. Appellant has raised fourteen propositions of law. Each has been thoroughly reviewed and for the reasons stated below we find them without merit, and uphold the appellant's convictions and death sentence.

## I

In his first proposition of law appellant argues that his waiver of his right to trial by jury was constitutionally insufficient because the trial court did not conduct a more thorough inquiry to determine whether the waiver was intelligent, voluntary and knowing. See Crim. R. 23(A); R.C. 2945.05. We note initially that this proposition of law was not raised in the court of appeals and hence the plain error standard of review of Crim. R. 52(B) is applicable to our consideration. Plain error does not exist unless it can be said that but for the error, the outcome below would clearly have been otherwise. See *State* v. *Long* (1978), 53 Ohio St. 2d 91, 7 O.O. 3d 178, 372 N.E. 2d 804, paragraph two of the syllabus; *State* v. *Greer* (1988), 39 Ohio St. 3d 236, 252, 530 N.E. 2d 382, 401.

Under R.C. 2929.03(C)(2)(a) and R.C. 2945.06 a defendant in a death penalty prosecution may waive his

right to a trial by jury and have his case heard before a three-judge panel. R.C. 2945.05, the general statute concerning jury waivers, prescribes language that should be used in waiving a jury trial.[1] In the case at bar, the waiver form signed by the appellant conformed to the language contained in R.C. 2945.05. Specifically, the form stated:

"I, REGINALD JELLS, the defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by three judges of the court in which said cause may be pending. I fully understand that under the laws of this State, I have a constitutional right to a trial by jury."

The statement was signed by appellant and two of his attorneys as witnesses.

Appellant asserts that the inquiry conducted by the court was inadequate to determine whether an intelligent, voluntary, and knowing waiver was made. Appellant points to the following colloquy:

"THE COURT: Reginald, is that your signature?

"THE DEFENDANT: Yes, it is, sir.

"THE COURT: You did this of your own free will?

"THE DEFENDANT: Yes, I did.

"THE COURT: Nobody forced you to do this?

"THE DEFENDANT: No, sir.

"THE COURT: All right.

"MR HUBBARD [defense counsel]: I have witnessed his signature, your Honor.

"THE COURT: This will be made part of the record."

Appellant cites this court's opinion in *State* v. *Ruppert* (1978), 54 Ohio St. 2d 263, 271, 8 O.O. 3d 232, 237, 375 N.E. 2d 1250, 1255, certiorari denied (1978), 439 U.S. 954, as authority for his position that the trial court in this case failed to determine whether his waiver was properly made. We find *Ruppert* not to be on point. In *Ruppert* the defendant was misinformed by the trial judge that if he waived a jury trial the three-judge panel would have to unanimously find him guilty when all that was required was a majority decision. The court held that since the defendant was misinformed his waiver was not intelligent, voluntary, and knowing. *Id.* at 272, 8 O.O. 3d at 237, 375 N.E. 2d at 1255-1256. Here, there is no allegation by the appellant that the trial court misinformed him of his rights concerning the execution of the waiver form.

There is no requirement in Ohio[2] for the trial court to interrogate a defendant in order to determine

---

[1] R.C. 2945.05 provides:

"In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. It shall be entitled in the court and cause, and in substance as follows: 'I _____, defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a Judge of the Court in which the said cause may be pending. I fully understand that under the laws of this state, I have a constitutional right to a trial by jury.'

"Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel. Such waiver may be withdrawn by the defendant at any time before the commencement of the trial."

[2] Contrary state practice is summarized in *Sessums* v. *State* (Fla. App. 1981), 404 So. 2d 1074, at 1076, fn. 1.

whether he or she is fully apprised of the right to a jury trial. The Criminal Rules and the Revised Code are satisfied by a written waiver, signed by the defendant, filed with the court, and made in open court, after arraignment and opportunity to consult with counsel. See *State* v. *Morris* (1982), 8 Ohio App. 3d 12, 14, 8 OBR 13, 15-16, 455 N.E. 2d 1352, 1355. While it may be better practice for the trial judge to enumerate all the possible implications of a waiver of a jury, there is no error in failing to do so. Since the executed waiver in this case complied with all of the requirements of R.C. 2945.05, and counsel was present at the signing of the waiver, we find no error.

Accordingly, we find no error, plain or otherwise, and appellant's first proposition of law is not well-taken.

## II

In his fourth and sixth propositions of law, appellant contends that the photographic array shown to certain witnesses, for purposes of identification, was unduly suggestive and violated several of appellant's state and federal constitutional rights.

## A

First, appellant begins by asserting that the admission of the testimony of five-year-old Devon Stapleton was improper because he was unable to independently and truthfully relate facts and he was shown an unduly suggestive photographic array.

Evid. R. 601 sets forth the standards for determining the competency of a child as follows:

"Every person is competent to be a witness except:

"(A) Those of unsound mind, and children under (10) years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly * * *[.]"

In *State* v. *Boston* (1989), 46 Ohio St. 3d 108, 114, 545 N.E. 2d 1220, 1228, this court noted that "Evid. R. 601(A) contemplates that to be competent, a witness must be able to receive a just impression of the facts, be able to recollect those impressions, be capable of communicating those impressions to others, and must understand the obligation to be truthful."

Prior to Devon's testimony the court held a competency hearing. During the voir dire, Devon testified that he knew that it was good to tell the truth and bad to tell a lie. Devon showed his ability to relate and recall facts by testifying about the circumstances of his mother's death. During his substantive testimony, Devon again proved he was able to testify by describing the facts surrounding the abduction, including the appellant's use of a van, the object used to hit his mother, the junkyard where his mother's body was discarded, and the events that took place after he was dropped off by appellant. Both the voir dire and the substantive testimony of Devon show that he was qualified to testify; therefore, the trial court did not abuse its discretion in allowing him to do so. See, *e.g.*, *State* v. *Adams* (1980), 62 Ohio St. 2d 151, 157, 16 O.O. 3d 169, 173, 404 N.E. 2d 144, 149 ("[t]he term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.").

## B

Still within his fourth proposition of law, appellant alleges error with respect to the photographic array shown to Devon, in view of his age and impressionability. The array consisted of five photographs, four of other men,

taken indoors, and one of appellant, taken outdoors. Appellant claims that the photograph of him was dark, and his features were nearly indistinguishable. Both Owen Banks and Devon Stapleton selected appellant's photograph from the array, and subsequently identified him in court.

In order to suppress identification testimony, there must be "* * * a very substantial likelihood of irreparable misidentification." *Simmons* v. *United States* (1968), 390 U.S. 377, 384; accord *State* v. *Perryman* (1976), 49 Ohio St. 2d 14, 3 O.O. 3d 8, 358 N.E. 2d 1040, vacated on other grounds (1978), 438 U.S. 911. In *Neil* v. *Biggers* (1972), 409 U.S. 188, 199-200, the United States Supreme Court set forth the following factors to be considered in examining an identification procedure and its impact:

"* * * [W]hether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive. As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. * * *"

The focus, under the "totality of the circumstances" approach, is upon the reliability of the identification, *not* the identification procedures. *State* v. *Lott* (1990), 51 Ohio St. 3d 160, 175, 555 N.E. 2d 293, 308; *Manson* v. *Brathwaite* (1977), 432 U.S. 98, 114 ("* * * reliability is the linchpin in determining the admissibility of identification testimony * * *."); *State* v.

*Moody* (1978), 55 Ohio St. 2d 64, 67, 9 O.O. 3d 71, 72, 377 N.E. 2d 1008, 1010 ("[a]lthough the identification procedure may have contained notable flaws, this factor does not, *per se*, preclude the admissibility of the subsequent in-court identification.").

In applying the criteria set forth in *Biggers* it is clear to this court that there was sufficient independent opportunity for Devon to view the appellant. Specifically, Devon and the victim had been in the appellant's van for a period of time before they fled the van at the intersection of Euclid Avenue and Lakeview. Devon saw appellant grab his mother after she fled the van, and put her back into the van. Devon himself was picked off the sidewalk and put back into the van. He witnessed the bludgeoning of the victim by the appellant. During these events, Devon had an extended period of time within which to view the appellant. Further, Devon indicated that he was able to identify the appellant because he saw appellant commit the acts he described. Although appellant claims there were some inconsistencies with Devon's testimony, we find upon review of the entire transcript that he gave a generally accurate eyewitness account. Devon's testimony was not necessarily inconsistent and certainly not indicative of an unreliable witness. See *State* v. *Moody, supra,* at 69, 9 O.O. 3d at 74, 377 N.E. 2d at 1011 ("[a]lthough there was some evidence of discrepancies on the part of the complainant in her identification of the appellant as her assailant, these questionable areas in complainant's description were particularly for the jury to decide."). Therefore, we find no error with the photographic array shown to Devon.

## C

In his sixth proposition of law, ap-

pellant again attacks the same photographic array with respect to the identification made by Owen Banks. For the same reasons that Devon's identification is reliable, Owen Banks' identification is also reliable. Banks saw the same incident and described it virtually the same as Devon. Furthermore, he identified the appellant as the man who abducted Devon and the victim. Banks not only saw appellant struggling with the victim, but also went up to the appellant and confronted him regarding appellant's treatment of the victim. Banks even commented that, although he was shown other photographs, he recognized the appellant "right off." Thus, under the totality of the circumstances, the identifications of the appellant by Devon Stapleton and Owen Banks were reliable. Consequently, regardless of the validity of the identification procedures used by the state, the identification testimony of these witnesses at trial was properly admitted.

Accordingly, appellant's fourth and sixth propositions of law are overruled.

### III

In his seventh proposition of law appellant states he was denied due process of law by the admission of expert testimony that was not based upon a reasonable scientific certainty.

### A

First, appellant challenges the testimony of Cleveland police officer James Yonkers who stated that he lifted two footprints, one of the victim from the windshield of appellant's van, and one of appellant's shoe which was taken from the piece of cardboard found near the body of the victim in the junkyard. In both instances a photolith, a high-contrast transparency used as an overlay, was taken of the soles of appellant's and of the victim's shoes and compared with the shoe prints on the window of the van and the cardboard, respectively. Appellant claims that the testimony of Officer Yonkers did not rise to the level of reasonable scientific certainty nor did his testimony assist the trier of fact. Essentially, appellant argues that the testimony offered by Officer Yonkers was unqualified expert testimony. We disagree. Instead we find that the testimony was merely lay opinion testimony.

Evid. R. 701 permits opinion testimony of a lay witness if the opinion or inferences are: "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue." In *State* v. *Hairston* (1977), 60 Ohio App. 2d 220, 14 O.O. 3d 191, 396 N.E. 2d 773, a police officer was permitted to compare tennis shoe prints with the soles of the tennis shoes the defendant was wearing. The *Hairston* court stated: "As to the necessity for expert testimony, it would appear that testimony on footprints can be given by lay witnesses." *Id.* at 222, 14 O.O. 3d at 192, 396 N.E. 2d at 775. Further, the court noted, " '[i]n presenting footprint evidence, it appears that a witness is often allowed to express his opinion as to the similarity of prints, if he shows that his conclusions are based on measurements or peculiarities in the prints, although in some cases it is held that he must restrict his testimony merely to a statement of the facts. Because of the obvious means of comparing footprints a lay witness is often allowed to testify in this regard and express his opinion as to similarity.' " *Id.*, quoting Annotation (1954), 35 A.L.R. 2d 856, 861; see, also, *Richardson* v. *State* (1953), 221 Ark. 567, 254 S.W. 2d 448 (no error was committed in allowing

officers, as nonexpert witnesses, to testify to the similarity of footprints in the field from which corn was stolen to the defendant's footprints); *Hutt* v. *State* (1987), 70 Md. App. 711, 523 A. 2d 643 (expert testimony was not necessary to establish correspondence between shoe prints found at scenes of three break-ins and workboots worn by defendant when arrested and tennis shoe recovered from his residence, where photograph and cast of prints and shoes themselves were offered in evidence, and trier of fact was as capable as any witness of examining evidence and noting any similarities or dissimilarities); *People* v. *Holmes* (1976), 41 Ill. App. 3d 956, 354 N.E. 2d 611 (the arresting officers could properly testify that defendant's shoe print had the same indentation on the left heel as the shoe print found at the scene of the crime, and the lack of expertise of the witnesses only went to the weight, not admissibility, of the evidence); *State* v. *Drake* (Mo. 1957), 298 S.W. 2d 374 (no error where nonexpert testifies that shoe marks at the scene of a burglary were made by defendant's shoes, since testimony was as to personally observed facts); *State* v. *Plowden* (1983), 65 N.C. App. 408, 308 S.E. 2d 918 (nonexpert testimony about shoe prints is admissible; basis or circumstances behind nonexpert opinion on shoe print do not affect admissibility, but go to the weight of the evidence); *State* v. *Edmondson* (1984), 70 N.C. App. 426, 320 S.E. 2d 315, affirmed (1986), 316 N.C. 187, 340 S.E. 2d 110; *White* v. *State* (Fla. App. 1979), 375 So. 2d 622; *D'Antignac* v. *State* (1977), 238 Ga. 437, 233 S.E. 2d 206; *People* v. *Lomas* (1981), 92 Ill. App. 3d 957, 416 N.E. 2d 408; *State* v. *Haarala* (La. 1981), 398 So. 2d 1093; *State* v. *Walker* (Minn. 1982), 319 N.W. 2d 414; *State* v. *Cullen* (Mo. App. 1979), 591 S.W. 2d 49. Thus, a lay witness may be permitted to express his or her opinion as to the similarity of footprints if it can be shown that his or her conclusions are based on measurements or peculiarities in the prints that are readily recognizable and within the capabilities of a lay witness to observe. This means that the print pattern is sufficiently large and distinct so that no detailed measurements, subtle analysis or scientific determination is needed. In such a situation, the pattern is simply identified as being similar to that customarily made by shoes. In essence, the testimony is "more in the nature of description by example than the expression of a conclusion." See *Hairston, supra,* at 223, 14 O.O. 3d at 193, 396 N.E. 2d at 775.

In the case *sub judice* the conclusion of the police officer was based upon personal observation. Although Officer Yonkers testified that this was the first time he had examined a shoe print taken from a windshield, his past experience evidenced the fact that he routinely compared patterns of grooves of bullets which, arguably, were similar to comparing the grooves that can be left by some tennis shoe patterns. Furthermore, Officer Yonkers was not testifying as to the results of a scientific test; therefore, the standard of a reasonable scientific certainty was not applicable.

### B

Next, appellant challenges the testimony offered by Rynette Reed of the Cleveland Police Department Scientific Investigation Unit who testified as to bloodstains that were found on the pants and tennis shoes of appellant. Specifically, appellant now claims that the testimony should have been excluded because Reed was unable to determine the blood type, and, as to the stain on the pants, whether it was even human blood.

Reed's testimony was admitted without objection. Thus, it must be determined if the admission of this testimony constituted plain error.

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence. Evid. R. 401. This court held in *State* v. *Sage* (1987), 31 Ohio St. 3d 173, 31 OBR 375, 510 N.E. 2d 343, that the admission of relevant evidence rests within the sound discretion of the trial court. And the three-judge panel in this case, presumably, considered only relevant evidence. See *State* v. *Moreland* (1990), 50 Ohio St. 3d 58, 63, 552 N.E. 2d 894, 900; *State* v. *White* (1968), 15 Ohio St. 2d 146, 151, 44 O.O. 2d 132, 136, 239 N.E. 2d 65, 70.

In reviewing Reed's testimony we conclude that the evidence presented was relevant to the case; therefore, no plain error occurred below. Alternatively, since this issue was not raised in the court of appeals it is considered waived for purposes of this appeal. See *State* v. *Broom* (1988), 40 Ohio St. 3d 277, 288-289, 533 N.E. 2d 682, 695-696.

Accordingly, appellant's seventh proposition of law is overruled.

### IV

Appellant in his fifth proposition of law alleges that the lineup shown to witness Edward Wright was unduly suggestive and inherently unreliable. Appellant bases this proposition on the fact that, while the other men in the lineup were wearing street clothes, appellant was wearing prison garb, *i.e.,* a jumpsuit.

In *State* v. *Sheardon* (1972), 31 Ohio St. 2d 20, 60 O.O. 2d 11, 285 N.E.

2d 335, paragraph two of the syllabus, this court held with respect to police lineups that:

"The due process clause of the Fifth and Fourteenth Amendments forbids any pre- or post-indictment lineup that is unnecessarily suggestive and conducive to irreparable mistaken identification. * * *"

See, also, *Kirby* v. *Illinois* (1972), 406 U.S. 682. A reviewing court should examine the factors surrounding the actual eyewitness incident to determine whether the witness is susceptible to suggestion which would lead to an irreparable, mistaken identification. See *Neil* v. *Biggers, supra.*

In the case *sub judice* Wright was able to describe the clothes that Devon and the victim wore. Wright was able to recognize that appellant's hair in court was shorter than it had been at the scene of the kidnapping. In applying the *Biggers* factors (see discussion at II B, *supra*), we find that Wright had ample opportunity to independently observe and identify appellant. Furthermore, he unequivocally displayed his ability to identify the defendant based on his recollection of the defendant's conduct. Accordingly, this proposition of law is not well-taken.

### V

In his ninth proposition of law appellant asserts that inflammatory and gruesome photographs were admitted in the guilt phase of the trial, thereby violating certain of his state and federal constitutional rights. Specifically, appellant argues that the photographs were inflammatory and cumulative, thereby outweighing any probative value of the evidence. Therefore, appellant maintains that the photographs should have been ex-

cluded from evidence pursuant to Evid. R. 403.[3]

In *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 15 OBR 379, 473 N.E. 2d 768, paragraph seven of the syllabus, we held:

"Properly authenticated photographs, even if gruesome, are admissible in a capital prosecution if relevant and of probative value in assisting the trier of fact to determine the issues or are illustrative of testimony and other evidence, as long as the danger of material prejudice to a defendant is outweighed by their probative value and the photographs are not repetitive or cumulative in number."

As we stated in *State* v. *Morales* (1987), 32 Ohio St. 3d 252, 258, 513 N.E. 2d 267, 274, "the emphasis that a trial judge must apply in meeting an Evid. R. 403 objection has changed in capital cases. To be admissible in a capital case, the probative value of each photograph must outweigh the danger of prejudice to the defendant and, additionally, not be repetitive or cumulative in nature. Contrary to the Evid. R. 403 standard, where the probative value must be minimal and the prejudice great before the evidence may be excluded, pursuant to *Maurer, supra,* if the probative value does not, in a simple balancing of the relative values, outweigh the danger of prejudice to the defendant, the evidence must be excluded."

In reviewing the photographs we find that only four are gruesome. Two of these show the victim on the cor-

oner's table. Specifically, one of these photos shows the victim partially clothed with her blue jeans pulled down and her blouse torn about her torso, while the other shows the victim without clothes. These photos appear to be cumulative due to their angle and distance from the subject matter. Although these photographs show the badly decomposed and injured face of the victim with maggots present, they cannot be readily seen due to the distance of the camera in relation to the body. The other two gruesome photos show closer views of the torso and face, where the body was found; however, they are not repetitious or cumulative since they emphasize different portions of the deceased. Of the remaining photos, some show merely the same wounds at different distances or angles, but are not particularly gruesome. According to *State* v. *Thompson* (1987), 33 Ohio St. 3d 1, 9, 514 N.E. 2d 407, 416, "[t]he portrayal of the identical subject matter in two slides, one from a relative distance and the other from a close proximity to the subject matter, is clearly repetitive in nature." Assuming in this case that some of the photographs should not have been admitted due to their repetitive or cumulative nature, any error was harmless under *Thompson, supra,* since several witnesses saw appellant kidnap the victim and since Devon Stapleton saw appellant attack his mother. Clearly, the three-judge panel would have convicted appellant even if the photographs had not been introduced into evidence.

---

[3] Evid. R. 403 provides:

"(A) *Exclusion mandatory.* Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

"(B) *Exclusion discretionary.* Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."

Accordingly, appellant's ninth proposition of law is overruled.

## VI

Appellant's tenth proposition of law states that he was denied a fair trial because the court failed to record side bar conferences. We note initially that appellant failed to raise this issue below. Therefore, we review this proposition under the plain error standard of review. See Crim. R. 52(B).

No evidence is presented by appellant that he was prejudiced. There was no objection by defense counsel, nor did defense counsel urge the court to record the side bar conferences.

App. R. 9(A) requires that "[i]n all capital cases the trial proceedings shall include a written transcript of the record made during the trial by stenographic means." Crim. R. 22 dictates that all proceedings shall be recorded in all "serious offense cases." Where a proceeding has not been preserved counsel may invoke the procedure of App. R. 9(C) or 9(E) to reconstruct what was said or to establish its importance. "In the absence of an attempt to reconstruct the substance of the remarks and demonstrate prejudice, the error may be considered waived." *State* v. *Brewer* (1990), 48 Ohio St. 3d 50, 60-61, 549 N.E. 2d 491, 502; *United States* v. *Gallo* (C.A.6, 1985), 763 F. 2d 1504, 1529-1532, certiorari denied (1986), 475 U.S. 1017.

Since appellant in the instant case has not complied with the above procedures, and absent a showing of prejudice, there is no evidence that appellant was denied a fair trial. Accordingly, appellant's tenth proposition of law is not well-taken.

## VII

In his eighth proposition of law, appellant alleges that aggravated murder and kidnapping are allied offenses of similar import and, therefore, he cannot be convicted of both crimes.

R.C. 2941.25 sets the parameters for when the state may obtain convictions for two or more allied crimes of similar import. Generally, R.C. 2941.25(A) bars the state from obtaining convictions for allied offenses of similar import:

"Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."

As an exception to this bar, R.C. 2941.25(B) allows convictions for allied offenses of similar import, when the defendant's "* * * conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each * * *." The two-tiered test for determining whether two or more offenses are allied offenses of similar import was recently reviewed by this court in *Newark* v. *Vazirani* (1990), 48 Ohio St. 3d 81, 549 N.E. 2d 520, syllabus, where we stated that "* * * [i]n the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's *conduct* is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses. (*State* v. *Blankenship* [1988], 38 Ohio St. 3d 116, 117, 526 N.E. 2d 816,

817, approved and followed.)" (Emphasis *sic.*)

A comparison of the elements of kidnapping and aggravated murder clearly shows that they are not similar. Kidnapping, as charged in this case, involves the removing of a person by force, threat, or deception from the place where he is found, or restraining him of his liberty, to facilitate the commission of a felony or the flight thereafter and/or to terrorize or inflict serious physical harm on the victim. R.C. 2905.01(A)(2) and (3). The aggravated murder count in this case charged appellant with purposely causing the death of another while committing or attempting to commit kidnapping. R.C. 2903.01(B).

In *State* v. *Logan* (1979), 60 Ohio St. 2d 126, 14 O.O. 3d 373, 397 N.E. 2d 1345, syllabus, this court was confronted with the question of when a defendant may be convicted of kidnapping and another offense of the same or similar kind under R.C. 2941.25. The guidelines set forth are as follows:

"* * *

"(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;

"(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions."

Accord *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 197-198, 15 OBR 311, 339-340, 473 N.E. 2d 264, 295; *State* v. *Maurer, supra,* at 243, 15 OBR at 382-383, 473 N.E. 2d at 775.

Here, the kidnapping was complete and independent of the murder. The appellant forced the victim into a van and completed the kidnapping when he drove off. He later murdered the victim. Clearly, the kidnapping was more than merely incidental to the underlying crime of murder. Accordingly, this proposition of law is not well-taken.

## VIII

In appellant's second proposition of law he contends that in comparing the aggravating circumstances with the mitigating factors, the three-judge panel relied on the "nature and circumstances" of the offense as nonstatutory aggravating circumstances in violation of his state and federal constitutional rights. Specifically, appellant points out that the trial court referred in its opinion to the "aggravating circumstances" of the case in the plural instead of in the singular, thereby implying that it considered more than one aggravating circumstance. We find this proposition of law wholly without merit.

This court held in *State* v. *Stumpf* (1987), 32 Ohio St. 3d 95, 512 N.E. 2d 598, syllabus, "[u]nder R.C. 2929.03 (F), a trial court or three-judge panel may rely upon and cite the nature and circumstances of the offense as reasons supporting its finding that the aggravating circumstances were sufficient to outweigh the mitigating factors."[4] Further, this court has stated

---

[4] We note parenthetically the recent United States Supreme Court decision of *Clemons* v. *Mississippi* (1990), 494 U.S. ___, ___, 108 L. Ed. 2d 725, 736, 110 S. Ct. 1441, 1446, where the court held:

"Nothing in the Sixth Amendment as

that "[i]n its sentencing opinion, it * * * [is] wholly proper for the panel to rely upon and cite the nature and circumstances of the offense as reasons for supporting the finding that the aggravating circumstance outweighed the mitigating factors. *Stumpf, supra.* We presume that the panel * * * [knows] the difference between an aggravating circumstance on the one hand and the nature and circumstances of the crime on the other hand. Simply because the panel [in this case] referred to aggravating circumstance*s* does not mean that the nature and circumstances of the crime became a nonstatutory aggravating circumstance." *State.* v. *Moreland, supra,* at 69, 552 N.E. 2d at 905.

The trial court in its opinion merely cited the nature and circumstances of the *offense,* not any additional nonstatutory aggravating circumstances. There is no evidence that the three-judge panel considered any nonstatutory aggravating circumstances. Thus, appellant's argument that because the three-judge panel used "circumstances" in the plural, nonstatutory aggravating circumstances were considered is without merit. Accordingly, appellant's second proposition of law is overruled.

## IX

Appellant in his third proposition of law alleges that although the three-judge panel found two mitigating factors, it failed to consider other evidence of mitigating factors pursuant to R.C. 2929.04(B)(7)[5] and to weigh relevant mitigating factors. The court found as mitigating factors (1) the youth of the offender, and (2) that the defendant lacked a significant history of prior criminal involvement, although he did have a delinquency adjudication. However, it did not find that the mitigating factors outweighed the aggravating circumstances of the crime. There is no evidence that the court failed to consider any mitigating factors or that it failed to weigh the mitigating factors that it found the appellant established.

Next appellant attacks the trial court's use of a preponderance of evidence standard in determining whether mitigation has been established. This standard has been approved by this court in *State* v. *Stumpf, supra,* at 101, 512 N.E. 2d at 605.

Appellant also maintains that the trial court applied the standard of proof beyond a reasonable doubt when determining the existence of other mitigating factors. There is no

---

construed by our prior decisions indicates that a defendant's right to a jury trial would be infringed where an appellate court invalidates one of two or more aggravating circumstances found by the jury but affirms the death sentence after itself finding that the one or more valid remaining aggravating factors outweigh the mitigating evidence. * * *"

This decision by the Supreme Court is in line with the requirement that Ohio appellate courts make a separate independent review of death sentences for appropriateness and proportionality, regardless of whether the case is tried to a three-judge panel or jury. See R.C. 2929.05.

Thus, in section XIV of this opinion, *infra,* we have weighed the aggravating *circumstance,* and conclude that it outweighs the mitigating factors beyond a reasonable doubt. Therefore, even if the three-judge panel considered a nonstatutory aggravating circumstance as alleged, we independently determine that the sole aggravating circumstance outweighs the mitigating factors. Consequently, appellant's proposition of law is overruled as to this issue.

[5] R.C. 2929.04(B)(7) requires that the court consider "[a]ny other factors that are relevant to the issue of whether the offender should be sentenced to death."

evidence that the court required appellant to prove beyond a reasonable doubt the existence of any mitigating factor. The language the court used was: "[t]his Court finds beyond a reasonable doubt that the defendant offered no sufficient proof of any of the factors enumerated in Subsection B of the Ohio Revised Code 2929.04." It is obvious that the court was not requiring the defendant to prove the mitigating factors beyond a reasonable doubt. Rather, the court used this language to ensure that it gave such thorough consideration that it was able to find beyond a reasonable doubt that further mitigation was not established. Accordingly, this proposition of law is not well-taken.

## X

In his twelfth proposition of law[6] appellant alleges that it is unconstitutional to impose the death penalty based on the commission of a felony murder where the aggravating circumstance merely duplicates an element of the felony murder.

We have previously addressed this issue and have upheld its constitutionality in *State* v. *Jenkins, supra,* at 177-178, 15 OBR at 322-323, 473 N.E. 2d at 279-280, and *State* v. *Poindexter* (1988), 36 Ohio St. 3d 1, 4, 520 N.E. 2d 568, 571.

## XI

In appellant's thirteenth proposition of law he alleges that the proportionality review used by this court, in which only the cases in which the defendant has been sentenced to death are used for comparison, is unconstitutional. This court previously decided this issue in *State* v. *Steffen* (1987), 31 Ohio St. 3d 111, 124, 31 OBR 273, 284, 509 N.E. 2d 383, 395, by holding:

"No reviewing court need consider any case where the death penalty was sought but not obtained or where the death sentence could have been sought but was not." See, also, *State* v. *Jenkins, supra,* at 176-177, 15 OBR at 322, 473 N.E. 2d at 279. Therefore, pursuant to *Poindexter, supra* (see discussion at footnote six of this opinion), we summarily overrule this proposition of law.

## XII

In his fourteenth proposition of law appellant argues that Ohio's death penalty statute is unconstitutional. All these arguments have been addressed by this court and have been found to be not well-taken. See *State* v. *Wickline* (1990), 50 Ohio St. 3d 114, 124, 552 N.E. 2d 913, 923-924; *State* v. *Buell* (1986), 22 Ohio St. 3d 124, 22 OBR 203, 489 N.E. 2d 795; *State* v. *Maurer, supra; State* v. *Zuern* (1987), 32 Ohio St. 3d 56, 512 N.E. 2d 585; *State* v. *Jenkins, supra.*

Since appellant has not presented any compelling reason why we should now find the statute to be unconstitutional, we reject appellant's fourteenth proposition of law.

## XIII

In his eleventh proposition of law appellant suggests that Ohio's mandatory sentencing scheme is unconstitutional since it provides that if the three-judge panel finds that the aggravating circumstances outweigh the

---

[6] In *State* v. *Poindexter* (1988), 36 Ohio St. 3d 1, 520 N.E. 2d 568, syllabus, we stated with respect to issues which have been treated previously in capital cases that, "[w]hen issues of law in capital cases have been considered and decided by this court and are raised anew in a subsequent capital case, it is proper to summarily dispose of such issues in the subsequent case."

mitigating factors it is required to impose the death penalty.[7]

The United States Supreme Court has recently decided that a mandatory sentencing scheme such as Ohio's is not unconstitutional. *Blystone* v. *Pennsylvania* (1990), 494 U.S. \_\_\_\_, 108 L. Ed. 2d 255, 110 S. Ct. 1078; *Boyde* v. *California* (1990), 494 U.S. \_\_\_\_, 108 L. Ed. 2d 316, 110 S. Ct. 1190. Accordingly, this proposition is not well-taken.

## XIV

Finally, we must independently review the death sentence for appropriateness and proportionality.

Appellant killed Ruby Stapleton after first kidnapping her and her child off the streets of Cleveland, Ohio. We find that the aggravating circumstance is proved beyond a reasonable doubt.

Appellant introduced in mitigation that he had no significant history of prior criminal conduct, he could possibly adapt well to imprisonment, his youth (twenty-one years old), and his low intelligence.

Weighing the various mitigating factors against the aggravating circumstance, we conclude that the aggravating circumstance outweighs the mitigating factors beyond a reasonable doubt.

In comparing the sentence of death in this case to those cases where we have previously imposed the death sentence we find the sentence here is neither excessive nor disproportionate to sentences for other kidnapping/murder convictions upheld by this court. See, *e.g.*, *State* v. *Morales, supra; State* v. *Broom* (1988), 40 Ohio St. 3d 277, 533 N.E. 2d 682.

For the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.

---

[7] R.C. 2929.03(D)(3) as relevant to this case provides:

"Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted to the court pursuant to division (D)(1) of this section, if, after receiving pursuant to division (D)(2) of this section the trial jury's recommendation that the sentence of death be imposed, the court finds, by proof beyond a reasonable doubt, or if the panel of three judges unanimously finds, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, it *shall impose sentence of death* on the offender. * * *" (Emphasis added.)