JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant, Kurtis Fields, appeals the finding of guilt and sentence rendered in the common pleas court. Appellant also seeks correction of the trial court's journal entry of conviction. For the reasons that follow, we affirm the finding of guilt and vacate his sentence. We also direct the trial court to correct its journal entry of conviction relative to the merger of counts one and two.
 {¶ 2} Appellant was indicted by the Cuyahoga County Grand Jury on four counts of felonious assault and one count of having a weapon while under disability. The victim of counts one and two, felonious assault, was Linda Brown. Count one charged appellant with serious physical harm to Brown and count two charged appellant with physical harm to Brown by means of a deadly weapon. The victim of count three, felonious assault, was Lynetta Jackson. Count three charged appellant with attempting to cause physical harm to Jackson. Count four charged appellant with attempting to cause physical harm to Nicole (last name unknown). The four felonious assault charges all contained one- and three-year firearm specifications.
 {¶ 3} Prior to trial, the State and defense stipulated that appellant had been convicted of a prior felony for the purpose of count five, having a weapon while under disability. Thus, the jury was to determine only whether appellant had a firearm.
 {¶ 4} At trial, Brown explained what occurred. Brown testified that she, Jackson (her cousin) and Nicole were traveling to a friend's house on the date in question. Jackson was the driver, Brown was the front seat passenger and Nicole was the rear right seat passenger. As the car approached the intersection of East 88th Street and Superior Avenue, a small, red car "cut off" their car, causing Jackson to immediately stop the vehicle. The small, red car continued traveling into a nearby parking lot.
 {¶ 5} Jackson drove her car in front of the parking lot where the small, red car had pulled in. Jackson then told Brown to open the front passenger door. While still seated in the car, Jackson confronted the driver of the red car, who was out of his car at that time. The driver was angry and responded with profane language. Brown testified that she could clearly see the assailant's face, which was illuminated by the lights in the parking lot. Brown recognized the front seat passenger in the assailant's car as Lashawn Graham.
 {¶ 6} Brown explained that the driver of the red car then returned to his car and released the latch for the hood of his car. The driver then walked around to the hood of the car, grabbed an object from the engine area and started shooting in the direction of the three woman, who were all still seated in their car.
 {¶ 7} Brown believed that the assailant's gun was chrome and black and probably a .45 caliber. Brown described the bullets as "flying everywhere." Brown further testified that appellant continued firing his gun as the women drove off. After Jackson pulled off, Brown realized that she had been shot in the buttocks.
 {¶ 8} Brown testified that all three persons in their car observed that the red car appeared to be following them. As they were driving, the three women saw an ambulance. Jackson drove her car in the direction of the ambulance and the driver of the red car went in the opposite direction. Jackson stopped her car at the ambulance so that Brown could seek medical attention. Brown was transported by the ambulance to the hospital for treatment.
 {¶ 9} The police officers who responded on the evening of the shooting found one bullet hole in the rear passenger door of the vehicle. The police determined that the bullet traveled through the rear passenger door to where Brown had been sitting in the front passenger seat. The police also interviewed Brown at the hospital. Brown did not know her assailant's name, but described him to the police as "a light brown male with a black hat," with either braids or a do-rag hanging out of the hat. Brown explained that her assailant's face was "familiar," but that she "had to take time to think where [she knew] the face from." Based on Brown's description, the initial police report described the assailant as "medium-complected, braids, 20." During her initial interview with the police, Brown did not mention that she recognized Graham as the front seat passenger in the assailant's car.
 {¶ 10} After her interview with the police, and while still in the hospital, Brown learned from her cousins that her assailant's name was "Kurtis," and it was at that time she was able to put the name to the face. Brown remembered that "Kurtis" and Graham are brothers and that she had seen the two of them together on previous occasions. Brown shared this information during her first interview with the investigating detective, Amy Duke. Detective Duke showed Brown a photo line-up, in which neither appellant nor Graham were featured. Brown did not identify any of the suspects from that first line-up as being her assailant.
 {¶ 11} During her second interview with Detective Duke, however, Brown identified appellant, who she still knew at that time only by his first name, from a photo line-up. Brown also identified Graham from another photo line-up. Brown testified that she was "100 percent sure" that appellant was the individual who shot her.
 {¶ 12} Finally, Brown testified that approximately one month after the incident, Anthony Lockhart, appellant's friend, approached her and attempted to bribe her not to testify.
 {¶ 13} At the conclusion of the State's case-in-chief, the defense made a Crim.R. 29 motion for acquittal, which the trial court overruled. The defense then called Lockhart who testified that he had been elsewhere with Graham at the time of the incident. Lockhart denied attempting to bribe Brown. At the conclusion of Lockhart's testimony, the defense renewed its Crim.R. 29 motion for acquittal. The court denied the motion as to counts one and two (felonious assault on Brown) and count five (having a weapon while under disability) and reserved its rulings as to counts three and four (felonious assault relative to Jackson and Nicole, respectively). After the jury returned a guilty verdict as to all the counts and specifications, the court denied the defense's Crim.R. 29 motion for acquittal as to counts three and four.
 {¶ 14} In his first assignment of error, appellant contends that the evidence was insufficient to sustain a conviction as to counts three and four. We disagree.
 {¶ 15} Crim.R. 29(A) governs motions for acquittal and provides for a judgment of acquittal if the evidence is insufficient to sustain a conviction. Pursuant to Crim.R. 29, a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. A Crim.R. 29(A) motion for acquittal "should be granted only where reasonable minds could not fail to find reasonable doubt." State v. Apanovitch (1987),33 Ohio St.3d 19, 23, 514 N.E.2d 394; State v. Jordan, Cuyahoga App. Nos. 79469 and 79470, 2002-Ohio-590.
 {¶ 16} The standard for a Crim.R 29 motion is virtually identical to that employed in testing the sufficiency of the evidence. State v. Turner, Franklin App. No. 04AP-364,2004-Ohio-6609, citing State v. Thompkins, 78 Ohio St.3d 380,386, 1997-Ohio-52, 678 N.E.2d 541. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Thompkins, supra.
 {¶ 17} In this assignment of error, appellant challenges the two felonious assault convictions relative to Jackson and Nicole. Specifically, appellant contends that there was "no evidence that Nicole, who was in the back seat, was even visible to [appellant] as he stood outside the vehicle[,]" and that "there was no evidence that [appellant] intended to hit anyone other than Brown." Appellant goes on to argue that "[o]nly one shot entered the vehicle, and it caused Brown's injuries. As for Brown's testimony about there having been other shots fired, this is evidence of menacing but is not, without more, evidence that [appellant] intended to hit Jackson." We are not persuaded by appellant's arguments.
 {¶ 18} R.C. 2903.11, governing the two counts of felonious assault relative to Jackson and Nicole, provides in pertinent part that "[n]o person shall knowingly * * * cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."
 {¶ 19} Brown testified that appellant was angry because Jackson had confronted him about cutting her off. Appellant shot in the direction of the three women, who were all still seated in their car, while Brown had her door opened. A reasonable inference could thus be made that appellant, angry at Jackson, intended to cause her physical harm.
 {¶ 20} The one bullet hole that was discovered in the car was found at the rear passenger door; Nicole had been sitting in the rear passenger seat. A reasonable inference could therefore also be made that appellant intended to cause physical harm to the person in the rear passenger seat, in this case, Nicole.
 {¶ 21} Moreover, Brown described the bullets as "flying everywhere," and how appellant continued firing his gun even as the women drove off.
 {¶ 22} Based upon the aforementioned, the State presented sufficient evidence to support the felonious assault convictions relative to Jackson and Nicole, and appellant's first assignment of error is overruled.
 {¶ 23} In his second assignment of error, appellant challenges his conviction as being against the manifest weight of the evidence. We disagree.
 {¶ 24} A challenge to the weight of the evidence attacks the credibility of the evidence presented. Thompkins, supra, at 387. When evaluating a claim that a conviction was contrary to the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id.; State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. The discretionary power to reverse should be invoked only in exceptional cases "where the evidence weighs heavily against the conviction." Martin, supra.
 {¶ 25} Appellant bases his manifest weight challenge on Brown's identification of him, arguing that her testimony in that regard was "incredible." In particular, appellant cites the fact that in Brown's description to the police she never identified him as having facial hair, while appellant had facial hair in the photo line-up from which Brown identified him. Appellant also notes that Brown never described the distinct curvature of appellant's teeth (i.e., an overbite) to the police, despite her testimony that she had known about this characteristic for years.
 {¶ 26} Appellant next notes that Brown did not tell the police that she recognized the passenger, Graham, in appellant's car. Appellant also argues that the police report indicates that Brown described appellant as having braids, while at trial Brown testified that appellant may have been wearing a do-rag and denied that she told the police he had braids. Finally, appellant argues that "Brown vacillated between light and medium about the shooter's skin tone."
 {¶ 27} Convictions based on eyewitness identification will be set aside only if the identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. UnitedStates (1968), 390 U.S. 377, 384, 88 S.Ct. 967; State v. Jells
(1990), 53 Ohio St.3d 22, 27, 559 N.E.2d 464. Even if an identification procedure is suggestive, the identification testimony may be admissible if the identification was reliable.Manson v. Brathwaite (1977), 432 U.S. 98, 114, 97 S.Ct. 2243;Neil v. Biggers (1972), 409 U.S. 188, 93 S.Ct. 375; Jells,
supra. To determine whether an identification was reliable, the court considers the totality of the circumstances, particularly the following five factors:
 {¶ 28} "* * * the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Biggers, supra, at 199. See, also, Manson
and Jells, supra.
 {¶ 29} Here, reviewing the totality of the circumstances, we do not find Brown's identification of appellant "incredible." Brown testified that she was able to clearly see appellant's face, as it was illuminated by lights in the parking lot. The face was "familiar" to Brown, but she "had to take time to think where [she knew] the face from." Upon learning from her cousins that her assailant's name was "Kurtis," Brown was able to put the name to the face. In fact, she testified that she was "100 percent sure" that appellant was the individual who shot her.
 {¶ 30} Based upon the aforementioned, appellant's conviction was not against the manifest weight of the evidence and, thus, his second assignment of error is overruled.
 {¶ 31} In his third assignment of error, appellant argues that the trial court erred when it sentenced him to more than the minimum sentence in violation of Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531.
 {¶ 32} Until recently, R.C. 2929.14(B) governed more than the minium sentences, and required that "if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
 {¶ 33} "(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
 {¶ 34} "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 35} While this case was pending on appeal, the Supreme Court of Ohio, in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, 845 N.E.2d 470, relying on Apprendi v. NewJersey (2000), 530 U.S. 466, 120 S.Ct. 2348, and Blakely,
supra, held that R.C. 2929.14(B), as well as other provisions in the Revised Code, is unconstitutional because it violates a defendant's Sixth Amendment right to a jury trial.
 {¶ 36} Pursuant to United States v. Booker (2005),543 U.S. 220, 125 S.Ct. 738, the Supreme Court of Ohio's remedy was to sever the unconstitutional provisions of the Revised Code, including R.C. 2929.14(B). After severance, judicial factfinding is not required before imposing a sentence that is more than the minimum. Foster, supra, at paragraph two of the syllabus.
 {¶ 37} Here, in sentencing appellant to more than minimum, the court made findings pursuant to R.C. 2929.14(B). Thus, in accordance with Foster,/appellant's sentence must be vacated and the case remanded for resentencing. For that reason, appellant's third assignment of error is sustained.
 {¶ 38} In his fourth and final assignment of error, appellant contends that the journal entry of conviction is incorrect. Specifically, appellant seeks to have the entry amended to reflect the merger of counts one and two, and that the conviction on the having a weapon while under disability was a fifth, rather than a third, degree felony.
 {¶ 39} In regard to the merger of counts one and two, although there may not be any requirement that the entry state the merger of the counts for the purpose of sentencing, we can see no reason why, upon appellant's request for same, it not be done, especially since the matter is being remanded for resentencing.
 {¶ 40} In regard to the degree of felony for the having a weapon while under disability count, appellant's counsel conceded at oral argument that the charge is a third degree felony.[1]
 {¶ 41} Thus, appellant's fourth assignment of error is granted in part and denied in part.
Finding of guilt affirmed; sentence vacated; case remanded for resentencing and correction of journal entry of conviction.
This cause is reversed and remanded for further proceedings consistent with the opinion herein.
It is, therefore, ordered that appellant recover from appellee costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, P.J., and Gallagher, J., concur.
[1] R.C. 2923.13, governing weapons while under disability, was amended, effective April 8, 2004, to change the crime from a fifth degree felony to a third degree felony. This offense occurred on October 26, 2004 and, thus, was a third degree felony.