[Cite as *State v. Gaines*, 2014-Ohio-3494.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100209**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DERRICK GAINES

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-565652

**BEFORE:** E.T. Gallagher, J., Jones, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** August 14, 2014

**ATTORNEY FOR APPELLANT**

Rick L. Ferrara
Rick L. Ferrara, Esq.
2077 East 4th Street, 2nd Floor
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Aleksandra Chojnacki
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

**{¶1}** Defendant-appellant, Derrick Gaines ("Gaines"), appeals his felonious assault conviction. Finding no merit to the appeal, we affirm.

**{¶2}** In October 2012, Gaines was indicted on a single count of felonious assault, with prior conviction and repeat violent offender specifications. The indictment resulted from allegations that Gaines struck an 84-year-old man, Edward Medwig ("Medwig" or "the victim"), in the head at Thistledown Racetrack, causing severe injuries to his head and neck.

**{¶3}** The case was assigned to the mental health docket. Both the Cuyahoga County Court Psychiatric Clinic and an independent expert found Gaines competent to stand trial and determined him to be sane.

**{¶4}** The case proceeded to a bench trial. The trial court denied Gaines's Rule 29 motions to dismiss, made orally at both the conclusion of the state's case and Gaines's own case. Gaines was found guilty by the trial court of the single count of felonious assault with both specifications. The trial court sentenced Gaines to six years in prison.

**{¶5}** It is from his conviction that Gaines now appeals, raising three assignments of error.

**Waiver**

**{¶6}** In his first assignment of error, Gaines argues he did not knowingly, voluntarily, and intelligently execute his jury waiver.

**{¶7}** R.C. 2945.05, which governs a defendant's waiver of his right to a trial by jury, provides:

> In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof.
>
> * * *
>
> Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel. Such waiver may be withdrawn by the defendant at any time before the commencement of the trial.

To be valid, a jury waiver must be voluntary, knowing, and intelligent. *State v. Bays*, 87 Ohio St.3d 15, 19, 716 N.E.2d 1126 (1999). A written waiver is presumptively knowing, intelligent, and voluntary, and the defendant has the burden of showing otherwise. *Id*. Gaines argues this presumption should be "set aside" in the instant case.

**{¶8}** He argues the trial court committed plain error in accepting his waiver without asking him whether he had taken his medication prior to signing the waiver. He argues the trial court should have done so because his case was on the mental health docket. Gaines argues this error invalidated his waiver.

**{¶9}** The Ohio Supreme Court has specifically held that "[t]here is no requirement in Ohio for the trial court to interrogate a defendant in order to determine whether he or she is fully apprised of the right to a jury trial." *State v. Jells*, 53 Ohio St.3d 22, 559 N.E.2d 464 (1990), paragraph one of the syllabus. The requirements for a valid jury waiver outlined in the Criminal Rules and the Revised Code are satisfied by a written waiver, signed by the defendant, filed with the court, and made in open court after

arraignment and an opportunity to consult with counsel. *State v. Morris*, 8 Ohio App.3d 12, 455 N.E.2d 1352 (8th Dist.1982).

{¶10} In the instant case, Gaines signed the waiver with his attorney as a witness. The waiver was filed with the court and was subsequently confirmed in open court. Moreover, the record illustrates that the trial court engaged Gaines in a thorough colloquy prior to accepting his waiver.

{¶11} When asked how he wanted to proceed, Gaines responded by saying "I want to go to trial, but I don't want a jury." (Tr. 9.) Gaines's counsel informed the court that he and his client had discussed the waiver prior to the trial, and Gaines had independently decided to waive his right to a jury.

{¶12} The trial court proceeded to ask Gaines if he understood the waiver, whether he signed it voluntarily, and whether he had any questions. Gaines stated on the record that he understood he was waiving his right to a jury trial, that he had discussed the waiver with his attorney, and that he signed it voluntarily. He stated that he had no questions. The trial court conducted this colloquy despite the fact that no additional colloquy was required to reaffirm that Gaines executed the waiver knowingly, intelligently, and voluntarily. *See State v. Currie*, 8th Dist. Cuyahoga No. 70022, 1997 Ohio App. LEXIS 912 (Mar. 13, 1997).

{¶13} Despite Gaines's argument to the contrary, the trial court clearly reviewed his jury waiver prior to accepting it, ensuring that it was knowingly, voluntarily, and

intelligently made. The waiver was completed pursuant to all statutory requirements. Accordingly, his first assignment of error is overruled.

## Manifest Weight and Sufficiency

{¶14} In his second assignment of error, Gaines argues his conviction is against the manifest weight of the evidence. In his third assignment of error, Gaines argues his conviction is not supported by sufficient evidence. Although the terms "sufficiency" and "weight" of the evidence are "quantitatively and qualitatively different," we address these issues together because they are closely related, while applying the distinct standards of review to Gaines's arguments. *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).

{¶15} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶16} In contrast to sufficiency, "weight of the evidence involves the inclination of the greater amount of credible evidence." *Thompkins* at 387. While "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d

1264, ¶ 25, citing *Thompkins* at 386-387. "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *Id*. The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶17} Gaines argues that his conviction is not supported by sufficient evidence and that it is against the manifest weight of the evidence. Gaines was convicted of one count of felonious assault, pursuant to R.C. 2903.11(A)(1), which provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another."

{¶18} At trial, Francine Plato ("Plato"), a 13-year employee of Thistledown, testified that on July 28, 2012, she witnessed a man, whom she identified as Gaines, strike the victim in the head. She testified that she was approximately 15 feet away from Gaines and Medwig when the incident occurred. She testified that Medwig fell to the floor after being struck in the front of the head by Gaines's hand, in what she described as a very hard "upper cut." She testified that she rushed to Medwig, who was lying on the ground unconscious.

{¶19} Plato testified that when security arrived, she gave them the description of the assailant. She described him as wearing a blue t-shirt, blue jeans, and carrying a plastic bag with a soda can and an orange in it. Shortly thereafter, security apprehended

a man matching that description in the parking lot, and Plato later identified him as the assailant. Plato identified Gaines in open court and on the record as the man who assaulted Medwig.

{¶20} David Ellsworth ("Ellsworth"), the director of operations at Thistledown, testified about the Thistledown surveillance video. The state showed the video surveillance taken of Gaines on the day in question. The video showed Gaines in the vicinity of the incident, walking from one side of the video's frame to the other, near the entrance, then leaving the frame. Moments later, the video shows Gaines reentering the frame, running in the opposite direction from which he had previously been walking. The actual incident was not caught on camera. Ellsworth testified that the video showed Gaines carrying the bag as described by Plato.

{¶21} Officer Mario Sprumelli ("Sprumelli") of the North Randall Police Department responded to a call at Thistledown Racetrack on the date of the incident. Sprumelli testified that Thistledown security apprehended Gaines in the parking lot. He testified to witnessing Plato's identification of Gaines as the assailant shortly thereafter.

{¶22} Medwig testified at trial that he remembered going to Thistledown on the day of the incident but has no other memory of that day. Medical testimony and evidence demonstrated that Medwig suffered a subdural hematoma and a cervical fracture as a result of the assault. He was in a coma for a month following the incident and had surgery to insert plates into his neck. Medwig testified that he will have difficulty eating and swallowing for the rest of his life as a result of the injuries he sustained that day.

{¶23} Finally, Gaines testified in his own defense. Gaines admitted to having been at Thistledown on the date in question. He testified that he had one beer before arriving and had not taken his medications that morning, which he testified can lead to his being unstable. He admitted to carrying a plastic bag containing a soda can and an orange. He testified that he did remember running into someone while rushing to place a bet but did not remember who. He testified that he ran into this person accidentally, said he was sorry, and proceeded to run to the betting station. Gaines testified that he was blind in his right eye and denied running into or striking anyone purposely.

{¶24} Gaines argues the trial court erred in finding Plato's testimony more credible than his own. The trial court, as the trier of fact in this case, was in the best position to judge the credibility of the witnesses and their testimony. Furthermore, the depiction of Gaines in the surveillance video matches the description Plato gave to police before he was apprehended. Gaines has failed to raise doubts as to Plato's credibility, but for arguing that the trial court should have found his testimony more credible.

{¶25} In addition, Gaines argues the trial court erred in convicting him when there was no evidence that he "knowingly" harmed Medwig, as required by R.C. 2903.11(A)(1). R.C. 2901.22(B) provides:

> A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

Plato's testimony, along with the medical evidence of Medwig's injuries, established that Gaines knowingly struck Medwig in the head and caused serious injury, regardless of his

purpose. Gaines's testimony that he "accidentally ran into" Medwig is not consistent with the injuries Medwig sustained or with Plato's eyewitness account of Gaines striking Medwig with enough force to cause him to fall to the ground and become unconscious.

**{¶26}** Therefore, after viewing the evidence in a light most favorable to the prosecution, we find sufficient evidence to establish beyond a reasonable doubt that Gaines committed felonious assault. Moreover, based on the aforementioned facts and circumstances, we find that the conviction is not against the manifest weight of the evidence.

**{¶27}** Accordingly, both his second and third assignments of error are overruled.

**{¶28}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

LARRY A. JONES, SR., P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR