UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 18, 2006[*]
Decided January 30, 2006

**Before**

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 05-2201

| | |
|---|---|
| IVY J. CARTER,<br>    *Petitioner-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin |
| *v.* | |
| | No. 00-C-1229 |
| GREGORY GRAMS,<br>    *Respondent-Appellee.* | Patricia J. Gorence,<br>*Magistrate Judge.* |

## O R D E R

A Wisconsin jury found Ivy Carter guilty of first-degree murder, as a party to a crime, Wis. Stat. §§ 939.05, 940.01(1), and the trial court sentenced him to life imprisonment. After exhausting his state-court remedies, Carter petitioned for habeas corpus under 28 U.S.C. § 2254, claiming, as relevant here, that Milwaukee police employed an unduly suggestive, pretrial identification procedure that resulted in an unreliable eyewitness identification at his trial. Carter had presented this claim on direct appeal to the Wisconsin Court of Appeals, which held

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

that the identification procedure was not impermissibly suggestive. *State v. Carter*, No. 93-1639-CR (Wis. Ct. App. May 3, 1994), *petition for review denied*, No. 93-1639-CR (Wis. Aug. 26, 1994). A magistrate judge, acting by consent of the parties, held that the state court's decision was not an unreasonable application of federal law and denied Carter's petition.

Donald Dall was shot and killed outside the Ritz Bar in Milwaukee, Wisconsin, in October 1991. Caroline Rogge, who was seated in a nearby car, witnessed the murder. She testified at Carter's trial that she saw a group of men in their late teens, one of whom used a gun to shoot Dall approximately five times. The next day, police showed Rogge a photograph array that did not include Carter's picture because he was not yet a suspect. Rogge stated that the gunman was not depicted, but she remarked that one of the photographs resembled him. A day later, after receiving information implicating Carter and two other men, police showed Rogge a second array, incorporating photographs of Carter and one of the other suspects. Rogge picked out none of the six men in the array, but she asked if she could see a lineup. Rogge, though, dropped out of sight until February 1992, when Craig Pradarelli—a private investigator that Carter hired after he was charged—found her and allegedly showed her individual pictures of Carter and the other suspect included in the second array.

Rogge contacted police after Pradarelli's visit. She stated that she had not identified either man in the photographs but thought one looked familiar, though she was not positive. The police then arranged a lineup (viewed by several witnesses) that included Carter but not his suspected accomplice. Rogge again said she was unable to identify anyone. That same day police showed Rogge and the other assembled witnesses the second photograph array that Rogge had seen four months earlier. The officers wanted to test whether the witnesses could recognize the picture of Carter's suspected accomplice, who had not been in the lineup. This time Rogge identified both Carter and his suspected accomplice as men present at the murder scene. Although she conceded that she told officers just moments before that she could not pick out anyone in the lineup, she explained that she recognized Carter from the crime scene but had been scared to identify him. Rogge added that she was not positive about the identification, but believed that Carter had shot Dall.

At trial, Rogge unequivocally identified Carter as the gunman. She explained that she did not identify him during the lineup because she was afraid of "what might happen" to her. She also said she had not been absolutely certain about her identification when she saw Carter during the lineup because of his clothing and the fact that he appeared taller than she remembered.

Carter challenged his conviction in state court based on the identification procedure. Specifically, he argued that the repeated opportunities to see him (in

the photographic array shown to Rogge in October and February and the lineup she viewed in February) led Rogge to believe she had seen Carter at the murder scene when in fact she had not. Carter also suggested that the police increased the likelihood that Rooge would remember his image by placing his picture on the left side of the photographic array (in the second row of photographs) and having him stand in the far-left position during the lineup (though Carter's trial counsel testified during a state-court hearing on Carter's postconviction motion that he, and not the police, requested that Carter stand in the far-left position). Finally, Carter argued that the use of both the lineup and the photographic array in February guaranteed that Rogge would identify him.

The Wisconsin Court of Appeals concluded that the identification procedure employed by police over the four month period was not unduly suggestive. Relying on *Powell v. State*, 271 N.W.2d 610, 617 (Wis. 1978), a Wisconsin Supreme Court decision that in turn applied *Neil v. Biggers*, 409 U.S. 188 (1972) (discussing circumstances in which eyewitness identification may violate defendant's right to due process), the court held that "the repeated use of Carter's photograph over the four month time period did not render the procedures impermissibly suggestive." The court did not go on to analyze the reliability of Rogge's identification.

We review the district court's denial of a § 2254 petition *de novo*. *Balsewicz v. Kingston*, 425 F.3d 1029, 1031 (7th Cir. 2005). The district court could have granted relief only if the Wisconsin court's analysis of Carter's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Woods v. McBride*, 430 F.3d 813, 816 (7th Cir. 2005).

Carter principally argues here that, contrary to the Wisconsin court's holding, the identification procedure was unduly suggestive because only he appeared in both the lineup and the photograph array that was shown to Rogge immediately after the lineup. He also argues that the short duration of time between the lineup and the use of the array increased the suggestiveness of the identification procedure. Carter relies on *Foster v. California*, 394 U.S. 440 (1969), in which the Court found an identification procedure to be unduly suggestive. In that case an eyewitness failed to positively identify Foster at an initial lineup, even though he "stood out from the other two men" in the lineup because he was taller and dressed in clothing most similar to the eyewitness's description of the suspect. *Id*. at 443. Police then arranged a "one-on-one confrontation," but the witness still could not positively identify Foster. *Id*. Ten days later police conducted a second lineup that resulted in a positive identification; only Foster appeared in both lineups. *Id*. at 441-42. The Court found the procedure "made it all but inevitable"

that the witness would positively identify Foster because he stood out in the initial lineup, was presented singularly to the witness, and was the only person to appear in both lineups. *Id*. at 443.

To resolve Carter's appeal, we need not decide whether the Wisconsin court's decision was an unreasonable application of federal law because the purported error could not have had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks and citation omitted) (describing harmless error analysis applicable to habeas corpus petitions asserting trial error); *Mason v. Brathwaite*, 432 U.S. 98, 118 & note (1977) (Stevens, J., concurring) (fact that "tends to confirm guilt" but does not support reliability under *Neil* should be relevant only to whether error was harmless); *United States v. Rogers*, 387 F.3d 925, 939 (7th Cir. 2004) (observing that unduly suggestive identification procedure is trial error; applying harmless error analysis to identification claim). Though the Wisconsin Court of Appeals, examining another of Carter's claims, observed that Rogge's identification testimony was an important part of the state's evidence, the court also stated that Carter confessed his crime to three people and an eyewitness (in addition to Rogge) placed him at the scene of the murder. Without any argument from Carter to the contrary, we conclude that Rogge's identification—the reliability of which was weighed by the jury after cross-examination, *see Watkins v. Sowders*, 449 U.S. 341, 349 (1981) (discussing jury's role in determining reliability of eyewitness identification); *see also United States ex rel. Kosik v. Napoli*, 814 F.2d 1151, 1156 (7th Cir. 1987)—could not have resulted in actual prejudice. *See Brecht*, 507 U.S. at 637.

AFFIRMED.