THE STATE OF OHIO, APPELLANT, *v.* BATES, APPELLEE.

[Cite as *State v. Bates,* 110 Ohio St.3d 1230, 2006-Ohio-3667.]

(No. 2005–1515—Submitted April 11, 2006—Decided August 2, 2006.)

{¶ 1} The cause is dismissed, sua sponte, as having been improvidently accepted.

{¶ 2} The court orders that the opinion of the court of appeals may not be cited as authority except by the parties inter se.

MOYER, C.J., RESNICK, PFEIFER and LANZINGER, JJ., concur.

LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., dissent.

---

**O'CONNOR, J., dissenting.**

{¶ 3} I disagree with the majority's decision to dismiss this cause as having been improvidently accepted.

{¶ 4} Following an afternoon high-speed car chase, Sgt. Timothy Franczak pursued on foot a man who had rapidly exited the driver's side of the car and escaped through a nearby fence. The sergeant later described the man as a

short, stocky black male between the ages of 18 and 20 and, despite having been a distance of 25 to 35 feet away from the man, stated that he clearly viewed the man's face as the man had turned to escape through the fence. During an inventory of the car, Sgt. Franczak found a cellular telephone and subsequently answered it when it rang. The caller asked for "Maurice" before hanging up.

{¶ 5} The sergeant then searched the vehicle's ownership information through the Law Enforcement Automated Data System ("LEADS") database and called the owner of the car. The owner told him that "Maurice" had had possession of her car for the past two days and gave to the sergeant "Maurice's" full name, address, and date of birth. Sgt. Franczak immediately entered that information into the LEADS database and obtained Maurice Bates's Bureau of Motor Vehicles photograph. Sgt. Franczak testified that his initial reaction to the photograph was "That's the guy," meaning that Bates was the man that he had chased that day.

{¶ 6} When Bates voluntarily appeared at the police station five days later, the sergeant again indicated that Bates's physical appearance merely confirmed what he already knew: that Bates was the individual who had run from him following the chase. Based upon the department's policy to seek direct indictment unless the crime involved a gun or violence, however, Sgt. Franczak did not immediately arrest Bates. After the sergeant read Bates his *Miranda* rights, Bates told the sergeant that another man had actually been involved in the crime. The sergeant then investigated the other individual and determined almost immediately that the other man bore no resemblance to the man that the sergeant had seen escaping through the fence.

{¶ 7} At trial, the court allowed testimony concerning the eyewitness identification by Sgt. Franczak, along with other evidence. Bates was convicted. The appellate court reversed Bates's convictions and remanded for a new trial based entirely on its holding that the identification testimony offered by Sgt. Franczak had violated Bates's due process rights because the testimony was based on an impermissibly suggestive identification process.

{¶ 8} The admission of impermissibly suggestive identification evidence obtained by unnecessary measures violates a defendant's constitutional due process rights in cases where the totality of the circumstances does not support the reliability of the identification. See *Manson v. Brathwaite* (1977), 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140. Courts generally find the use of a single photograph for identification purposes impermissibly suggestive absent extraordinary circumstances. See *Stovall v. Denno* (1967), 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. Even assuming that the procedure used in this case was suggestive,[1] the

---

1. Though it is questionable whether the actual procedure was suggestive or just a product of good police work, the state does not challenge this portion of the analysis. The suggestive aspect in this

suggestive nature of the identification goes only to the weight of the evidence, not to its admissibility. *State v. Jells* (1990), 53 Ohio St.3d 22, 26–27, 559 N.E.2d 464; *Manson v. Brathwaite,* 432 U.S. at 114, 97 S.Ct. 2243, 53 L.Ed.2d 140.

{¶ 9} A court determines admissibility of identification testimony by considering whether the totality of the circumstances indicates reliability despite the suggestive nature of the photographic identification. *Jells,* 53 Ohio St.3d at 27, 559 N.E.2d 464. Five factors establish reliability: (1) the opportunity of the witness to view the defendant at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of any prior description of the defendant given by the witness, (4) the level of certainty demonstrated by the witness as to the identification, and (5) the length of time between the crime and the identification. *Neil v. Biggers* (1972), 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401.

{¶ 10} The record reflects that Sgt. Franczak had only a brief view of the perpetrator as he ran through a fence before subsequently discovering the single LEADS photograph of Bates through his investigation of circumstantial evidence. The appellate court first considered whether the identification procedure utilized in this case was impermissibly suggestive. In deciding that issue, however, the appellate court improperly considered the *reliability* factors instead of analyzing the actual identification procedure. While the appellate court may have determined correctly that the use of a single LEADS photograph for identification purposes was impermissibly suggestive, the court engaged in improper analysis to reach that conclusion.

{¶ 11} The appellate court next decided that the sergeant's out-of-court and in-court identification testimony was unreliable. It relied heavily upon four factors: (1) the sergeant's limited time to view the perpetrator, (2) his failure to immediately arrest Bates when Bates voluntarily appeared at the police station for questioning, (3) the failure of the sergeant to state that Bates's twin brother resembled him in any way, and (4) the availability of a less suggestive and more reliable method of identification. Only the first factor has any relevance to the five-pronged reliability analysis. The appellate court's reliance on the remaining factors and its analysis do nothing to address the actual issue before it: whether, in the totality of the circumstances, the identification was sufficiently reliable.

{¶ 12} The appellate court ignored the relevant reliability factors. Instead, it applied an improper test, focusing myopically on whether the circumstantial evidence available to the sergeant "influence[d] [his] ultimate identification of

---

case appears to be the circumstantial evidence leading the sergeant to the LEADS photograph, not the consideration of a single LEADS photograph that was as likely to exonerate as to condemn the pictured individual.

Bates as the suspect-driver." Consideration of each erroneous fact relied upon by the appellate court demonstrates the court's misplaced reliance.

{¶ 13} First, Sgt. Franczak explained his failure to arrest Bates upon their first meeting: The department policy mandated direct indictment of any crime not involving a gun or violence. The sergeant did recognize Bates at the initial meeting and stated that he intended to immediately present the evidence to the grand jury for indictment. Given the totality of the circumstances in this case, the failure to arrest immediately has nothing to do with the reliability of the sergeant's identification testimony.

{¶ 14} Second, the fact that the sergeant never stated that Bates's twin brother resembled him is a red herring. Despite popular perception, identical twins may appear very different in person. The record contains no evidence that the twins were difficult to tell apart or that they greatly resembled each other. In fact, the defense introduced a photograph that included the twin brother, and Sgt. Franczak stated with certainty that none of the pictured individuals resembled the driver. Without any further evidence, there is no reason for the appellate court to assume that the twins looked alike. The jury was in a much better position to determine whether the twin brother resembled Bates so greatly that the sergeant should have "recognized" him in the photograph as the driver of the vehicle.

{¶ 15} Finally, the fact that a less suggestive and more reliable method of identification might exist has no bearing on the reliability factors. It only goes to whether the identification procedure was impermissibly suggestive. The jury had all of the facts before it in order to determine whether the identification procedure tainted the sergeant's identification. The appellate court should have considered that in conjunction with the first part of the test and not with reliability.

{¶ 16} When the actual reliability factors are applied to this case, the sergeant's identification testimony takes on a different character. Despite Sgt. Franczak's limited time to view the perpetrator at the scene of the crime, he *did* have a clear view. As a trained police officer, his degree of attention likely exceeded that of a person untrained in law enforcement. See *Manson v. Brathwaite*, 432 U.S. at 115, 97 S.Ct. 2243, 53 L.Ed.2d 140. He carefully observed the face of the driver as the driver was forced to take the time to get himself through a fence. The sergeant's general description of the suspect matched that of Bates, and he exhibited certainty in his identification. Finally, only a matter of hours passed between the crime and Sgt. Franczak's identification of Bates's LEADS photograph. Courts have regularly upheld the reliability of identification testimony even in light of the weakness of one of the factors. *Jells*, 53 Ohio St.3d at 27, 559 N.E.2d 464; *Brathwaite*, supra; *Neil v. Biggers*,

1234

409 U.S. at 200–201, 93 S.Ct. 375, 34 L.Ed.2d 401. Despite Sgt. Franczak's limited opportunity to view the suspect, the totality of the circumstances indicates reliability.

{¶ 17} The appellate court in this case used improper factors to determine whether the identification procedure was impermissibly suggestive, failed to consider the reliability factors laid out by *Biggers*, and, instead, overturned Bates's conviction on the basis that a less suggestive procedure could have been used rather than properly analyzing the actual reliability of the sergeant's identification in light of *Biggers*. The issue of whether the suggestive procedure produced a mistaken result is a question for the jury relying on the evidence produced at trial. See *Simmons v. United States* (1968), 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247. I would hold that the Eighth District invaded the province of the jury by purporting to overturn a conviction based upon reliability when, in fact, the court considered only whether the identification was impermissibly suggestive.

{¶ 18} Although the state and Bates argue only the reliability issue on appeal, a second issue should be addressed: Whether the improper admission of suggestive and unreliable identification testimony requires per se reversal. Once the appellate court determined that the testimony was impermissibly suggestive; it stopped its analysis.

{¶ 19} The United States Supreme Court has held that harmless-error analysis may apply to constitutional errors as long as those errors are not structural in nature. *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *Arizona v. Fulminante* (1991), 499 U.S. 279, 306–310, 111 S.Ct. 1246, 113 L.Ed.2d 302. "When reviewing the erroneous admission of * * * improperly admitted evidence, [the appellate court] simply reviews the remainder of the evidence against the defendant to determine whether the admission of the [improperly admitted evidence] was harmless beyond a reasonable doubt." Id., at 310, 111 S.Ct. 1246, 113 L.Ed.2d 302.

{¶ 20} Many federal appellate courts and at least one state appellate court have applied harmless-error analysis in reviewing cases where a trial court erroneously admitted improperly suggestive and unreliable identification testimony. See *Carter v. Grams* (C.A.7, 2006), 165 Fed.Appx. 480, 2006 WL 222326; *United States v. Smith* (C.A.3, 2005), 127 Fed.Appx. 608, 613; *United States v. Concepcion* (C.A.2, 1992), 983 F.2d 369, 379; *Souza v. Howard* (C.A.1, 1973), 488 F.2d 462, 466; *United States v. DeBose* (C.A.6, 1970), 433 F.2d 916, 918; *Johnson v. State* (2000), 246 Ga.App. 239, 243, 539 S.E.2d 914. Although this court has previously recognized that harmless error may apply to constitutional violations, see, e.g., *State v. Conway*, 108 Ohio St.3d 214, 2006–Ohio–791, 842 N.E.2d 996, at

¶ 78, it has never explicitly extended this standard of review to the admission of impermissibly suggestive and unreliable identification testimony.

{¶ 21} After determining that Sgt. Franczak's identification testimony was unreliable, the appellate court merely assumed that the improper admission of this evidence demanded reversal of Bates's convictions and a new trial. No legal precedent supports the court's per se reversal.

{¶ 22} In considering whether constitutional error is harmless, a court should determine "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Conway,* at ¶ 78, citing *Chapman,* 386 U.S. at 23, 87 S.Ct. 824, 17 L.Ed.2d 705. See, also, *State v. Madrigal* (2000), 87 Ohio St.3d 378, 388, 721 N.E.2d 52. The actual identification testimony by the sergeant in this case was only a small piece of evidence indicating Bates's guilt. Given the amount of circumstantial evidence supporting Bates's conviction, I would find that any error in the admission of the testimony was harmless error.

{¶ 23} Not only did the appellate court improperly vacate a conviction based upon the availability of less suggestive and reliable identification procedures and ignore the well-settled *Biggers* reliability factors, the court held that the constitutional violation at issue in this case mandated per se reversal instead of applying harmless-error analysis.

{¶ 24} I believe that the appellate court committed multiple errors and that the issues presented here should have been thoroughly addressed by this court. Accordingly, I respectfully dissent.

LUNDBERG STRATTON and O'DONNELL, JJ., concur in the foregoing dissenting opinion.

---

William D. Mason, Cuyahoga County Prosecuting Attorney, and T. Allan Regas, Assistant Prosecuting Attorney, for appellant.

Law Office of Timothy Farrell Sweeney and Timothy F. Sweeney, for appellee.