[Cite as *State v. Mayberry*, 2018-Ohio-2220.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27530 |
| | : | |
| v. | : | Trial Court Case No. 16-CR-2963 |
| | : | |
| ROBERT WINSTON MAYBERRY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 8th day of June, 2018.

. . . . . . . . . .

MATHIAS H. HECK, JR., by HEATHER N. JANS, Atty. Reg. No. 0084470, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

JOHN S. PINARD, Atty. Reg. No. 0085567, 120 W. Second Street, Suite 603, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

ROBERT WINSTON MAYBERRY, #734-139, Southeastern Correctional Institution, 5900 B.I.S. Road, Lancaster, Ohio 43130
      Defendant-Appellant, pro se

. . . . . . . . . . . .

FROELICH, J.

**{¶ 1}**  After the trial court overruled his motion to suppress, Robert Winston Mayberry pled no contest to robbery (physical harm), a felony of the second degree.   The trial court imposed four years in prison and notified him that he was subject to a mandatory three-year term of post-release control upon his release.   The court ordered Mayberry to pay court costs.   For the following reasons, the trial court's judgment will be affirmed.

### I. *Anders* **Procedural History and Standard**

**{¶ 2}** Mayberry's appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), indicating that he found no "meritorious issues for appeal."   Counsel raised three potential assignments of error, namely that (1) the trial court erred in denying Mayberry's motion to suppress, (2) the trial court failed to comply with Crim.R. 11 at the plea hearing, and (3) the trial court failed to sentence Mayberry within the statutory guidelines.

**{¶ 3}** We informed Mayberry that his attorney had filed an *Anders* brief on his behalf and granted him 60 days from that date to file a pro se brief.   On November 7, 2017, Mayberry filed a pro se brief, raising an additional assignment of error, i.e., that his trial counsel rendered ineffective assistance by failing to conduct any pretrial investigation.

**{¶ 4}** Upon an initial review of the record, we noted that appellate counsel had indicated that he had reviewed videos of trial court proceedings, but that no transcripts of those videos had been prepared.   We stated, "It is axiomatic that the record in an *Anders* case must contain transcripts of all on-the-record proceedings in the trial court.   When the record is incomplete, the filing of an *Anders* brief is not appropriate."   Decision and

Entry (Feb. 21, 2018). We ordered counsel to arrange for the preparation of the transcripts, which now has been done. Appellate counsel filed an amended *Anders* brief, which added citations to the transcripts.

{¶ 5} Pursuant to *Anders*, we must determine, "after a full examination of all the proceedings," whether the appeal is "wholly frivolous." *Anders*, 386 U.S. at 744; *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). An issue is not frivolous merely because the prosecution can be expected to present a strong argument in reply. *State v. Pullen*, 2d Dist. Montgomery No. 19232, 2002-Ohio-6788, ¶ 4. Rather, a frivolous appeal is one that presents issues lacking arguable merit, which means that, "on the facts and law involved, no responsible contention can be made that it offers a basis for reversal." *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, ¶ 8, citing *Pullen* at ¶ 4. If we find that any issue -- whether presented by appellate counsel, presented by the defendant, or found through an independent analysis -- is not wholly frivolous, we must appoint different appellate counsel to represent the defendant. *Id.* at ¶ 7.

## II. Factual and Procedural History

{¶ 6} According to the presentence investigation report (PSI), at approximately 3:00 a.m. on September 17, 2016, Jessica Cremeens[1] drove to the BP gas station on South Main Street in Dayton and parked by a gas pump; Cremeens's mother, Susie Kidwell, was a passenger in the vehicle. Cremeens pulled cash from her bra to give money to her mother to purchase cigarettes. Cremeens then placed the remaining cash,

---

[1] The record is inconsistent regarding the spelling of Cremeens's last name. This is the spelling used in the complaint and the indictment.

approximately $350, back into her bra.

{¶ 7} As Cremeens was seated in her vehicle, a man (later identified as Mayberry) approached her open driver's window, said he was hungry, and asked if she had spare change.   As Cremeens looked for change, Mayberry punched Cremeens on the left side of her jaw, reached into her bra, and stole the $350 in cash.   Mayberry fled on foot. Cremeens, Kidwell, and a witness, Ismail Muhammad, chased after Mayberry. Muhammad caught up with Mayberry behind the gas station and hit Mayberry with his (Muhammad's) gun, which Muhammad lawfully carried.   However, the magazine fell out of the gun, and Mayberry was able to flee when Muhammad retrieved it.   After the police were called, the three gave a description of the perpetrator and his clothing, which included a gray baseball cap with a skull on it.   A detective obtained surveillance video from the gas station; an image of the perpetrator from the video was later distributed to the media.

{¶ 8} On September 24, 2016, two Dayton police officers were dispatched to a residence in Dayton on a report that Mayberry was in the apartment and was wanted for an incident at the BP gas station.   Upon arrival, a female resident, who had called the police, indicated that Mayberry was hiding in the bathroom.   The resident showed the officers a gray baseball cap with a skull on it.   When Mayberry was apprehended, he was wearing the same shoes as the suspect in the surveillance video.

{¶ 9} The next day, Mayberry was charged by complaint with robbery, in violation of R.C. 2911.02(A)(2).   The municipal court set a $50,000 cash or surety bond.   After a preliminary hearing on October 3, 2016, the municipal court found probable cause to believe that Mayberry had committed the offense, and he was held pending the action of

the grand jury. On October 14, 2016, Mayberry was indicted for robbery (physical harm), in violation of R.C. 2911.02(A)(2). Mayberry was arraigned and entered a plea of not guilty.

{¶ 10} In November 2016, Mayberry moved to suppress the pretrial identification of him by Cremeens, Kidwell, and/or Muhammad. The court held a hearing on the motion on December 12, 2016, at which two detectives testified. The trial court denied the motion to suppress on February 27, 2017.

{¶ 11} On March 22, 2017, Mayberry pled no contest to the charged offense. The trial court ordered a presentence investigation (PSI). As stated above, the trial court sentenced Mayberry to four years in prison and ordered him to pay court costs.

{¶ 12} Mayberry appeals from his conviction.

### III. Motion to Suppress

{¶ 13} Appellate counsel states as a potential assignment of error that the trial court erred in denying Mayberry's motion to suppress. In his written motion, Mayberry sought to suppress the pretrial identifications by Cremeens, Kidwell, and/or Muhammad. During the suppression hearing, defense counsel stated that he was limiting his motion to Kidwell's identification.

{¶ 14} "Due process requires suppression of pre-trial identification of a suspect only if the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." *Neil v. Biggers*, 409 U.S. 188, 196-97, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

{¶ 15} The defendant must first show that the identification procedure was unduly suggestive. "A lineup is unduly suggestive if it steers the witness to one suspect,

independent of the witness's honest recollection." (Citations omitted.) *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 208. If the pretrial identification procedure was not unfairly suggestive, any remaining questions as to the identification's reliability go to the weight of the identification, not its admissibility, and no further inquiry into the reliability of the identification is required. *Id.* at ¶ 209; *State v. Williams*, 2d Dist. Montgomery No. 26357, 2015-Ohio-1403, ¶ 13.

{¶ 16} If, on the other hand, the defendant shows that the pretrial identification procedure was unduly suggestive, the court must then consider whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedure. *E.g.*, *Williams* at ¶ 13. In reviewing the likelihood that the circumstances resulted in a misidentification, courts have considered the opportunity of the witness to view the perpetrator at the time of the offense, the witness's degree of attention, the accuracy of the witness's prior description of the perpetrator, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.[2] *Neil* at 199-200; *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *State v. Bates*, 110 Ohio St.3d 1230, 2006-Ohio-3667, 850 N.E.2d 1208, ¶ 8.

---

[2] We have previously noted that some of the factors identified in *Neil* may bear reconsideration in light of the significant advancement of scientific understanding of memory. *See State v. Frazier,* 2016-Ohio-727, 60 N.E.3d 633, ¶ 18, fn. 1 (2d Dist.); *State v. Moody*, 2d Dist. Montgomery No. 26926, 2016-Ohio-8366, ¶ 12, fn. 3. For example, *Neil* and *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) direct courts to consider the witness's degree of certainty in the identification, yet studies have repeatedly shown little relationship between certainty and accuracy. Nonetheless, as an intermediate court of appeals, this court must continue to follow the factors articulated in *Neil* and *Manson,* as required by Ohio Supreme Court precedent. *See, e.g., State v. Bates,* 110 Ohio St.3d 1230, 2006-Ohio-3667, 850 N.E.2d 1208 at ¶ 9; *State v. Gross,* 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 19, ¶ 25.

{¶ 17} Reliability of the pretrial identification is the linchpin in determining its admissibility. *Manson* at 114. "So long as the identification possesses sufficient aspects of reliability, there is no violation of due process." *State v. Sherls*, 2d Dist. Montgomery No. 18599, 2002 WL 254144, *3 (Feb. 22, 2002).

{¶ 18} We review a trial court's denial of a motion to suppress a pretrial identification for an abuse of discretion. *State v. Wilson*, 2d Dist. Montgomery No. 22624, 2009-Ohio-1038, ¶ 19.

{¶ 19} Detectives Douglas Hall and Joseph Grieshop of the Dayton Police Department testified at the suppression hearing. Their testimony established the following facts.

{¶ 20} Detective Hall was assigned as the lead investigator of an incident that occurred at the BP gas station at 433 South Main Street on September 17, 2016. After an investigation, the detective identified Mayberry as a suspect. Using Justice Web, Hall prepared three photospreads to be shown to the victim and two witnesses. Hall explained that he entered Mayberry's age, race, sex, height, weight, hair, eye color, and "all the things that make up somebody's physical composition," and the program provided a large number of photographs from which the detective could choose for the photospreads. Detective Hall testified that he looked through approximately 30 to 42 photographs to find comparable individuals for the photospreads. Hall printed photospreads of six photos, including Mayberry; the program randomly ordered the photographs.

{¶ 21} Detective Hall testified that, after the photospreads were prepared, he gave the photospreads and instructions to a blind administrator, Detective Grieshop; Grieshop

did not have a printout identifying the individuals in the photographs. Hall stated that Detective Grieshop was not involved in the investigation and, to Hall's knowledge, did not know who the suspect in the case was.

{¶ 22} On September 27, 2016, Cremeens and Kidwell came to police department to view photospreads. Detective Hall greeted them and explained that they were going to be separated and were going to speak with a different detective. Hall told them that they would be asked to view some photographs that may or may not include the suspect. Hall escorted one of the women to Detective Grieshop and then went back to his office; the other woman waited in the lobby. When the first woman was done, Hall took the second woman to Grieshop. Hall did not recall whether Cremeens or Kidwell went first.

{¶ 23} Detective Grieshop testified that Detective Hall approached him, said he (Hall) had witnesses waiting, and that he needed someone unfamiliar with the case to administer a photospread. Grieshop stated that he was not familiar with Hall's case, that Hall did not discuss the case with him, and that he had not seen any news coverage.

{¶ 24} Grieshop took Kidwell to a room and read her verbatim the instructions on the packet. Grieshop testified that Kidwell circled photo number 5 (Mayberry's photo), initialed it, signed the page, and wrote the date. Kidwell further wrote that she was 98% certain that the selected individual "robbed and struck" her daughter.

{¶ 25} Because defense counsel limited the suppression motion to Kidwell's identification, Detective Grieshop was not asked about Cremeen's identification of Mayberry.

{¶ 26} On September 29, 2016, Muhammad came to the police station to view a photospread. As with Cremeens and Kidwell, Detective Hall took Muhammad to

Detective Grieshop, who administered the photospread. No further evidence was presented regarding Muhammad's identification.

{¶ 27} Upon review of the evidence from the suppression hearing, including the photo spread packet presented to Kidwell, we find no arguably meritorious argument that the identification procedure employed by the Dayton police was unduly suggestive. The photospread presented to Kidwell was not unduly suggestive. A blind administrator presented the photospread to Kidwell, and there was nothing in the manner in which Detective Hall greeted Kidwell and Detective Grieshop administered the photospread that would make the presentation unduly suggestive. We agree with appellate counsel that his proposed assignment of error regarding the denial of Mayberry's motion to suppress is frivolous.

## IV. Plea Hearing

{¶ 28} Appellate counsel's second proposed assignment of error raises that the trial court failed to comply with Crim.R. 11 at the plea hearing.

{¶ 29} Crim.R. 11(C)(2) requires the court to address the defendant personally and (a) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions; (b) inform the defendant of and determine that the defendant understands the effect of the plea and that the court, upon acceptance of the plea, may proceed with judgment and sentencing; and (c) inform the defendant and determine that he or she understands that, by entering the plea, the defendant is waiving the rights to a jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses, and to require the State

to prove guilt beyond a reasonable doubt at a trial at which he or she cannot be compelled to testify against himself or herself. *State v. Brown*, 2d Dist. Montgomery No. 21896, 2007-Ohio-6675, ¶ 3.

{¶ 30} The Supreme Court of Ohio has urged trial courts to literally comply with Crim.R. 11. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 29. However, because Crim.R. 11(C)(2)(a) and (b) involve non-constitutional rights, the trial court need only substantially comply with those requirements. *E.g.*, *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Id.* In contrast, the trial court must strictly comply with Crim.R. 11(C)(2)(c), as it pertains to the waiver of federal constitutional rights. *Clark* at ¶ 31.

{¶ 31} Furthermore, when non-constitutional rights are at issue, a defendant who challenges his plea on the basis that it was not knowingly, intelligently, and voluntarily made generally must show a prejudicial effect. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 17. Prejudice in this context means that the plea would otherwise not have been entered. *Id.* at ¶ 15.

{¶ 32} Mayberry's no contest plea was entered as part of a joint plea hearing with several other individuals in unrelated cases. The trial court addressed each person personally, in turn, throughout the hearing.

{¶ 33} With respect to Mayberry, the trial court asked Mayberry, and he agreed, that he was pleading no contest to robbery, a felony of the second degree, and that there was no agreement as to sentencing. The court stated, "We'll get a PSI and we'll be back

in court in two weeks."   Mayberry agreed that he wished to proceed in that manner.

{¶ 34} Mayberry stated that he was a United States citizen, that he was 48 years old, that he had completed 10th grade, that he could read and understand English, and that he had read and understood the plea form and had reviewed his plea form with his lawyer.   Mayberry stated that he was not under the influence of alcohol, drugs, or medication at the plea hearing, and he denied having a physical or mental condition that would impair his understanding of the plea hearing.

{¶ 35} Mayberry informed the trial court that he was on post-release control.   The trial court asked Mayberry if he understood that the court had no control over the Parole Authority.   The trial court stated:

> * * * You understand that you're going to enter a plea of no contest this morning.   I'm going to find you guilty, right?   You have the ability to take me up to the Court of Appeals if you want to about that motion to suppress that I made.   But in any event by virtue of the plea you're making and the finding of guilt that could, I'm not saying it will, have some impact with PRC, the parole authority.   I don't control that.   Are you still willing to go forward with your plea this morning, Mr. Mayberry?

Mayberry responded affirmatively.

{¶ 36} The trial court informed Mayberry that robbery, a second-degree felony, was punishable by a fine of up to $15,000, a prison term from two to eight years, and a mandatory three-year period of post-release control.   Mayberry indicated that he understood.   Mayberry also expressed his understanding that the court could impose restitution, court costs, and other financial sanctions.   The trial court informed Mayberry

about the potential consequences of violating post-release control, including the potential consequences if a new felony were committed while on post-release control.

{¶ 37} The trial court addressed Mayberry's eligibility for community control and that he faced eight years in prison if he violated the terms of any community control. Mayberry told the court that no one had promised him community control. Mayberry indicated that the trial court had fully articulated the terms of the plea, that he was not threatened or forced to enter his plea, and that he was entering his plea voluntarily.

{¶ 38} The trial court informed Mayberry of the effect of a no contest plea, and Mayberry indicated his understanding. The court reviewed Mayberry's constitutional rights and explained that he was waiving those rights as a result of his plea. The prosecutor read the charge against Mayberry, and Mayberry indicated that he understood it. Mayberry stated that he had enough time to consult with his lawyer, that he was satisfied with counsel's representation, and that he knew he was withdrawing any pending motions as a result of his plea. Mayberry indicated that he had no questions for the court, and he entered a plea of no contest.

{¶ 39} The trial court conducted a thorough plea hearing. The only matter of note is that the court did not inform Mayberry that it could revoke his existing post-release control and that, if it did so, any sentence it imposed for the violation would be consecutive to his sentence for the robbery. See R.C. 2929.141(A)(1). In this case, we conclude this presents no arguably meritorious issue; there is nothing to suggest that Mayberry would not have entered his plea had he been provided that notification, and the trial court did not, in fact, revoke his post-release control. There is no reasonable argument that Mayberry was prejudiced by the trial court's failure to include that notification.

## V. Sentencing

{¶ 40} In his third potential assignment of error, appellate counsel raises that the trial court failed to sentence Mayberry within the statutory guidelines.

{¶ 41} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law.

{¶ 42} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory criteria that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

{¶ 43} At sentencing, the trial court indicated that it had reviewed the PSI, and it gave the State, defense counsel, and Mayberry an opportunity to address the court. Mayberry expressed remorse. In imposing sentence, the trial court commented on Mayberry's lengthy criminal history, Mayberry's expression of remorse, and the fact that Mayberry had entered a plea. The court stated that it had considered the principles and purposes of sentencing, including the seriousness and recidivism factors set forth in the

Revised Code, and Mayberry's ability to pay financial sanctions. The trial court imposed four years in prison, which was in the low-middle portion of the statutory range. The court properly informed Mayberry that the sentence carried a mandatory term of three years of post-release control. The court ordered Mayberry to pay court costs; it did not impose a fine or restitution.

{¶ 44} Mayberry's sentence was within the statutory range of two, three, four, five, six, seven, or eight years. Mayberry was provided his right of allocution, and the trial court indicated that it had considered the statutory criteria. We find no non-frivolous issue that Mayberry's sentence was contrary to law.

## VI. Ineffective Assistance of Counsel

{¶ 45} Mayberry, pro se, raises the issue of ineffective assistance of counsel. He claims that his trial counsel acted deficiently by failing to conduct any pretrial investigation.

{¶ 46} To establish ineffective assistance of counsel, a defendant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the case would have been different. *See Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. A defendant is entitled to "reasonable competence" from his or her attorney, not "perfect advocacy." *See Maryland v. Kulbicki*, 136 S.Ct. 2, 5 (2015), citing *Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam).

{¶ 47} "*Strickland* and its progeny establish that when a court is presented with an ineffective-assistance-of-counsel claim, it should look to the full record presented by the defendant to determine whether the defendant satisfied his [or her] burden to prove deficient performance." *Reeves v. Alabama*, __ U.S. __, 138 S.Ct. 22, 26, 199 L.Ed.2d 341 (2017). Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992); *State v. Fields*, 2017-Ohio-400, 84 N.E.3d 193, ¶ 38 (2d Dist.).

{¶ 48} "A claim of ineffective assistance of counsel cannot be asserted on direct appeal if it relies on matters outside the record." *State v. Harris*, 2d Dist. Montgomery No. 27179, 2017-Ohio-9052, ¶ 19.

{¶ 49} Mayberry asserts that his trial counsel failed to adequately review documents that were produced by the State through discovery, which caused counsel to fail to discover inconsistencies between the victim's statement to the police and her medical records. The record does not reflect what evidence was provided to defense counsel during discovery, nor does it reflect how trial counsel reviewed those documents. In short, the evidence upon which Mayberry would rely in support of this argument is outside the record. This claim of ineffective assistance of counsel is not proper for direct appeal and is frivolous.

{¶ 50} Mayberry further asserts that his trial counsel should have challenged certain evidence provided by the State, such as photographs of Cremeens taken several days after the incident. He also argues that the surveillance video may have supported

his claim that he did not assault Cremeens and that trial counsel could have used the video in his defense.

{¶ 51} "[A] no contest plea is an admission to the facts as laid out at the plea hearing; the trial court retains discretion to consider a defendant's contention that the admitted facts do not constitute the charged offense, but the defendant who pleads no contest waives the right to present additional affirmative factual allegations to prove that he is not guilty of the charged offense." *State v. Cole*, 2d Dist. Montgomery No. 26576, 2015-Ohio-5295, ¶ 32. By pleading no contest to robbery, Mayberry waived any challenge to the sufficiency of the evidence against him. And, because he admitted to the facts alleged in the indictment, any argument that his trial counsel rendered ineffective assistance in failing to present favorable evidence on his behalf is frivolous.

{¶ 52} To the extent that Mayberry raises that his trial counsel rendered ineffective assistance by advising him to plead no contest, that argument also relies on evidence outside the record, is not cognizable on direct appeal, and is frivolous.

### VII. Independent Review and Conclusion

{¶ 53} We have conducted an independent review of the record and find no non-frivolous issues for appeal. Accordingly, the trial court's judgment will be affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and TUCKER, J., concur.

Copies mailed to:

Mathias H. Heck
Heather N. Jans
John S. Pinard
Robert Winston Mayberry
Hon. Steven K. Dankof