[Cite as *State v. Tanner*, 2020-Ohio-5413.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2020-CA-9 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-117 |
| | : | |
| D'AVAUGHNTAE DA'QUAN TANNER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of November, 2020.

. . . . . . . . . . .

JOHN M. LINTZ, Atty. Reg. No. 0097715, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

JAMES A. ANZELMO, Atty. Reg. No. 0068229, 446 Howland Drive, Gahanna, Ohio 43230
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} D'Avaughntae Da'Quan Tanner appeals from a judgment of the Clark County Court of Common Pleas, which convicted him on his guilty plea of one count of obstructing official business, in violation of R.C. 2921.31, a felony of the fifth degree. The trial court imposed a 12-month prison sentence. We affirm the judgment of the trial court.

{¶ 2} Tanner was charged by a bill of information on February 25, 2019, and he entered a guilty plea on April 10, 2019. At the plea hearing, the parties jointly recommend that the court not violate Tanner's post-release control at that time; the plea agreement also called for a presentence investigation (PSI) to be conducted before sentencing and that Case. No. 2018-CR-711 be dismissed. Tanner waived his right to a grand jury and 24-hour service of an indictment. The prosecutor then read the following facts into the record: On October 5, 2018, officers of the German Township Police Department observed Tanner operating a vehicle and learned that Tanner's license was suspended. When officers initiated a traffic stop with lights and siren, Tanner failed to stop and continued at a speed above the posted limit, "raising the risk of physical harm * * * and with the effort to delay the officers in making that arrest." The trial court found Tanner guilty, and sentencing was set for May 2, 2019.

{¶ 3} On May 1, 2019, Tanner's attorney filed a motion to continue, noting that Tanner was getting a mental health assessment and would like to have the results of the assessment made a part of the PSI. The court granted the motion and rescheduled sentencing for May 15, 2019. The record reflects that Tanner failed to appear on May 15, and a capias was issued for Tanner's arrest on June 7, 2019.

{¶ 4} Sentencing occurred on January 17, 2020. At sentencing, the prosecutor pointed out that, according to the PSI, Tanner had a prior felony conviction for a robbery

for which he had been sentenced to five years and then placed on community control, and that in June 2017 Tanner had violated the terms of his community control and a nine-month sentence was imposed. The prosecutor also noted prior convictions for obstructing official business, driving under suspension, and theft in which Tanner had failed to comply with the terms of probation or to pay fines and costs. Based on this history and the fact that Tanner had not appeared for sentencing in this case, the State asked to court to find that Tanner was "not amenable to community control sanctions and [to] impose a prison sentence of at least nine months."

{¶ 5} The trial court noted that Tanner had failed to appear for sentencing and that a mental health assessment for which he been granted a continuance had never been made part of the record. The Court also made the following findings:

> As to whether or not the offense is more serious or less serious, I find no factors indicating that it is more serious than that normally constituting this offense. There was no - - defendant did not cause or appear to expect to cause physical harm to persons or property.
>
> As to recidivism, [Tanner] was under release pursuant to [R.C.] 2967.28 [and was on post-release control when this offense was committed].
>
> Prior adjudications of delinquency, was not rehabilitated to a satisfactory degree after prior adjudications of delinquency. [Tanner] has a history of criminal convictions. It appears in most of those cases there was attempts to help the defendant. I see anger management and mental health assessment required in 2015 and again in 2017 out of Dayton, Ohio;

but the defendant has not responded favorably to sanctions previously imposed.

I find no genuine remorse for the offense. There is no military service record to consider. The defendant did score low on the Ohio Risk Assessment Survey.

The Court also now considers the fact that the defendant failed to appear for [the] disposition eight months ago, which would indicate to the Court that [the defendant is] not amendable to available community control sanctions.

The Court there[fore] finds that a prison term is consistent with the purposes and principles of the Revised Code to punish the defendant and protect the community.

The defendant's not amenable to available community control sanctions. A sentence of imprisonment is commensurate with the seriousness of [the] conduct and impact on the victim, which in this case is the community, and does not place an unnecessary burden on state governmental resources.

{¶ 6} The court's January 21, 2020 judgment entry of conviction imposed the 12-month sentence and stated that post release control was "optional for a period of up to three years." Tanner filed a motion to stay the sentence, which the trial court overruled. Tanner also filed a motion to stay in this Court, which the State opposed; we overruled the motion on September 4, 2020.

{¶ 7} Tanner asserts two assignments of error on appeal. The first assignment of

error is as follows:

THE TRIAL COURT UNLAWFULLY ORDERED D'AVAUGHNTAE TANNER TO SERVE A PRISON SENTENCE, INSTEAD OF COMMUNITY CONTROL, IN VIOLATION OF HER RIGHTS TO DUE PROCESS, GUARANTEED BY SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION AND FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

**{¶ 8}** This Court has noted:

The established standard of review for felony sentences is codified in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 8-9. The statute empowers an appellate court to vacate or modify a sentence only if it clearly and convincingly finds that the record does not support the sentence or that the sentence is contrary to law. *Id. See also State v. Mayberry*, 2d Dist. Montgomery No. 27530, 2018-Ohio-2220, ¶ 41. This standard is highly deferential. *State v. Tepfenhart,* 2d Dist. Clark No. 2018-CA-81, 2019-Ohio-651, ¶ 15.

*State v. Clem*, 2d Dist. Clark No. 2019-CA-61, 2020-Ohio-690, ¶ 7.

**{¶ 9}** R.C. 2929.13(B)(1)(a) provides:

Except as provided in division (B)(1)(b) of this section, if an offender is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense, the court shall sentence the offender to a community control sanction or combination of community control sanctions if all of the following apply:

(i) The offender previously has not been convicted of or pleaded guilty to a felony offense.

(ii) The most serious charge against the offender at the time of sentencing is a felony of the fourth or fifth degree.

(iii) If the court made a request of the department of rehabilitation and correction pursuant to division (B)(1)(c) of this section, the department, within the forty-five-day period specified in that division, provided the court with the names of, contact information for, and program details of one or more community control sanctions of at least one year's duration that are available for persons sentenced by the court.

(iv) The offender previously has not been convicted of or pleaded guilty to a misdemeanor offense of violence that the offender committed within two years prior to the offense for which sentence is being imposed.

{¶ 10} "This mandate notwithstanding, R.C. 2929.13(B)(1)(b) affords a trial court discretion to impose a prison term upon a defendant who otherwise would fit within the scope of division (B)(1)(a) if one or more of the enumerated factors apply." *Clem* at ¶ 9. R.C. 2929(B)(1)(b) provides:

The court has discretion to impose a prison term upon an offender who is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense if any of the following apply:

* * *

(ix) The offender at the time of the offense was serving, or the

offender previously had served, a prison term.

(x) The offender committed the offense while under a community control sanction, while on probation, or while released from custody on a bond or personal recognizance.

{¶ 11} We conclude that Tanner has not demonstrated that the record clearly and convincingly does not support the sentence imposed by the trial court. Tanner had been previously sentenced to prison and had committed obstructing official business while on post-release control, and Tanner's sentence was within the statutory range for a felony of the fifth degree. R.C. 2929.14(A)(5). Tanner's first assignment of error is overruled.

{¶ 12} Tanner's second assignment of error is as follows:

THE TRIAL COURT UNLAWFULLY ORDERED D'AVAUGHNTAE TANNER TO SERVE A SENTENCE IN AN INSTITUTION FOR MALE PRISONERS, INSTEAD OF FOR FEMALE PRISONERS, IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

{¶ 13} As this Court has previously noted:

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "no State shall * * * deny to any person within its jurisdiction the equal protection of the laws." Section 2, Article I of the Ohio Constitution states: "All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be

granted, that may not be altered, revoked, or repealed by the General Assembly." Although worded differently, "[t]he limitations placed upon governmental action by the Equal Protection Clauses of the Ohio and United States constitutions are essentially identical." *Beatty v. Akron City Hosp.* (1981), 67 Ohio St.2d 483, 491, 21 O.O.3d 302, 424 N.E.2d 586.

As a general rule, " '[a] person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual.' " *Hill v. Croft*, Franklin App. No. 05AP–424, 2005-Ohio-6885, at ¶ 16, quoting *Huebschen v. Dept. of Health & Social Servs.* (C.A.7, 1983), 716 F.2d 1167, 1171. "A 'class of one,' however, may appropriately maintain an equal protection claim where the plaintiff alleges both that the state treated the plaintiff differently from others similarly situated and that no rational basis exists for such difference in treatment." *Meyers v. Columbus Civ. Serv. Comm.*, Franklin App. No. 07AP–958, 2008-Ohio-3521, at ¶ 18. In an equal-protection claim, government actions that affect suspect classifications or fundamental interests are subject to strict scrutiny by the courts. *Eppley v. Tri-Valley Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 56, 2009-Ohio-1970, 908 N.E.2d 401, ¶ 14. In the absence of a suspect classification or fundamental interest, the state action is subject to a rational-basis test. *Id.*

*State v. Turner*, 192 Ohio App.3d 323, 2011-Ohio-393, 949 N.E.2d 57, ¶ 24-25 (2d Dist.).

{¶ 14} We note that, near the conclusion of Tanner's sentencing hearing, the trial

court indicated that Tanner was "to be conveyed to the Ohio Department of Rehabilitation and Corrections, care of the Marysville Reformatory for Women in Marysville, Ohio." After the court ordered Tanner to pay court costs and conducted other business related to the case, the proceedings were recessed at 9:34 a.m. The record then reflects that Tanner's case was recalled at 11:22 a.m. the same day. At that time, the court indicated as follows:

> The Court is recalling Case No. 19-CR-0117, the State of Ohio versus D'Avaughntae Tanner.
>
> One matter is a correction. I made out the wrong institution the defendant was supposed to be transferred to. The correct institution is Orient Correctional Facility in Orient, Ohio[1].

{¶ 15} The court then advised Tanner of the right to appeal. Tanner did not respond when asked by the court to acknowledge an understanding of those appellate rights, but counsel for Tanner stated, "He does, Judge." The court asked the record to reflect Tanner's refusal to respond.

{¶ 16} Tanner directs our attention to *Doe v. Massachusetts Dept. of Corr.,* D. Mass. No. 17-1225-RGS, 2018 WL 2994403 (June 14, 2018). *Doe* involved a transgender woman housed in a male prison overseen by the Massachusetts Department of Correction ("MDOC"). Doe filed a complaint against MDOC and several of its officials, alleging that she had been discriminated against in violation of the Americans with Disabilities Act of 1990 and the Rehabilitation Act of 1973 by her placement in a male

---

[1] The court's judgment entry of conviction, through which it speaks, stated that Tanner was "ORDERED conveyed to the Ohio Department of Rehabilitation and Correction, c/o the Orient Facility, Orient, Ohio."

prison. *Id.* at *1. The complaint further alleged that MDOC had failed to make reasonable accommodations of her Gender Dysphoria disability and alleged violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment and violations of the Federal Civil Rights Act. *Id.* Insofar as Doe sought relief against MDOC and the officials who supervised her, we conclude that the case is inapplicable to Tanner's appeal.

{¶ 17} Significantly, R.C. 5120.01 delegates authority to the Ohio Department of Rehabilitation and Correction ("ODRC") to assign inmates to particular institutions, including by sex. *See* ODRC Policy No. 79-ISA-05, Lesbian, Gay, Bisexual, Transgender, Intersex (LGBTI) Policy, (Eff. July 13, 2015). We further note that Tanner was identified as male in both the presentence investigation report and in the police report attached thereto. There is nothing in the record from which we can discern that Tanner is in the wrong institution based upon gender. Moreover, neither Tanner nor his counsel objected to Tanner's assignment to a male facility at sentencing. Accordingly, we presume the regularity of the proceedings below. Tanner's second assignment of error is overruled.

{¶ 18} The judgment of the trial court is affirmed.

. . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies sent to:

John M. Lintz
James A. Anzelmo
Hon. Richard J. O'Neill